No. 10-264C
(Judge Firestone)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

KRISTIAN M. MCCAIN and KELLY S. MCCAIN f/k/a KELLY S. MCKINNON,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

## DEFENDANT'S MOTION TO DISMISS, IN PART, AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

RUSSELL J. UPTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tel.: (202) 305-3634
Fax: (202) 514-8624
Russell.J.Upton@usdoj.gov

October 8, 2010                    Attorneys for Defendant

# TABLE OF CONTENTS

DEFENDANT'S BRIEF ........................................................................................... 2

STATEMENT OF THE QUESTIONS INVOVLED .................................................. 2

STATEMENT OF THE CASE ................................................................................. 2

    I.      Statement Of Facts ........................................................................................... 2

    II.     Proceedings In This Case ................................................................................ 7

    III.    Scope Of Defendant's Motion To Dismiss, In Part, And Motion For
           Partial Summary Judgment ............................................................................ 8

ARGUMENT .......................................................................................................... 9

    I.      Legal Standards .............................................................................................. 9

          A.     RCFC 12(b)(1) ...................................................................................... 9

          B.     RCFC 12(b)(6) ...................................................................................... 9

          C.     RCFC 56 .............................................................................................. 10

    II.     This Court Lacks Jurisdiction To Entertain Certain Of Plaintiffs' Claims .......... 11

          A.     The Court Should Dismiss Plaintiffs' Claims Against Defendants
                Other Than The United States For Lack Of Jurisdiction ......................... 11

          B.     The Court Should Dismiss Plaintiffs' Tort Claims For Lack Of
                Jurisdiction ............................................................................................ 11

          C.     The Court Should Dismiss Plaintiffs' Declaratory And Injunctive
                Relief Claims For Lack Of Jurisdiction .................................................. 12

    III.    The Court Should Dismiss Plaintiffs' Breach Of Contract Claim For
           Failure To State A Claim Upon Which Relief May Be Granted Because
           Plaintiffs Did Not Adhere To The Pleading Requirements Of RCFC 9(k) ......... 14

    IV.    The Court Should Grant Summary Judgment In Defendant's Favor As To
           Plaintiffs' Breach Of Contract Claim Because No Contract Exists Between
           Plaintiffs And The Government .......................................................................... 15

A.    The Vangent Employee Lacked The Authority To Bind The
      Government To The Apparent Contract ................................................. 15

B.    The Alleged Contract Is Void Under The Doctrine Of Unilateral
      Mistake ...................................................................................................... 17

CONCLUSION ............................................................................................................... 19

.

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ............................................................................................ 10, 11

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ............................................................................................ 9

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544,
    127 S. Ct. 1955 (2007) ............................................................................................ 9

Betz v. United States,
    40 Fed. Cl. 286 (1998) ............................................................................................ 12

Brown v. United States,
    105 F.3d 621 (Fed. Cir. 1997) ............................................................................... 12

Celotex Corp. v. United States,
    477 U.S. 317 (1986) ............................................................................................... 10

Curry v. United States,
    221 Ct. Cl. 741,
    609 F.2d 980 (1979) ............................................................................................... 11

DJ Manufacturing Corporation v. United States,
    86 F.3d 1130 (Fed Cir. 1996) ............................................................................... 10

Doko Farms v. United States,
    13 Cl. Ct. 48 (1987) ............................................................................................... 13

Flowers v. United States,
    80 Fed. Cl. 201 (2008) ........................................................................................... 11

Hall v. United States,
    19 Cl. Ct. 558 (1990) ........................................................................................ 15, 16

Hall v. United States,
    69 Fed. Cl. 51 (2005) ..................................................................................... passim

James v. Caldera,
    159 F.3d 573 (Fed. Cir. 1998) ............................................................................... 13

iii

Joslyn v. United States,
    90 Fed. Cl. 161 (2009) ................................................................................................ 12

Keene Corp. v. United States,
    508 U.S. 200 (1993) .................................................................................................... 11

Legal Aid Soc'y of New York v. United States,
    92 Fed. Cl. 285 (2010) ................................................................................................ 13

Lindsay v. United States,
    295 F.3d 1252 (Fed. Cir. 2002) .................................................................................... 9

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) .................................................................................................... 10

McNutt v. Gen. Motors Acceptance Corp.,
    298 U.S. 178,
    56 S. Ct. 780 (1936) .................................................................................................... 9

Northrop Grumman Corp. v. United States,
    47 Fed. Cl. 20 (2000) .................................................................................................. 17

Pratt v. United States,
    50 Fed. Cl. 469 (2001) ................................................................................................ 11

Reynolds v. Army & Air Force Exch. Serv.,
    849 F.2d 749 (Fed. Cir. 1988) ...................................................................................... 9

Rice v. United States,
    31 Fed. Cl. 156 (1994) ................................................................................................ 13

Rocovich v. United States,
    933 F.2d 991 (Fed. Cir. 1991) ...................................................................................... 9

Spirit Leveling Contractors v. United States,
    19 Cl. Ct. 84 (1989) .................................................................................................... 10

Stephenson v. United States,
    58 Fed. Cl. 186 (2003) ................................................................................................ 11

Sweats Fashions, Inc. v. Pennill Knitting Co.,
    833 F.2d 1560 (Fed. Cir. 1987) .................................................................................... 10

Thorndike v. United States,
    72 Fed. Cl. 580 (2006) ................................................................................................ 13

<u>United States v. Sherwood</u>,
    312 U.S. 584 (1941) ..................................................................................................... 11

## STATUTES

28 U.S.C. § 1331 ............................................................................................................ 12

28 U.S.C. § 1346(a)(2) ................................................................................................... 12

28 U.S.C. § 1367 ............................................................................................................ 12

28 U.S.C. § 1491 ............................................................................................................ 12

28 U.S.C. § 1491(2) ....................................................................................................... 13

28 U.S.C. § 1491(a)(1) ................................................................................................... 11

28 U.S.C. § 1491(b) ................................................................................................. 12, 13

Case 1:10-cv-00264-NBF Document 13 Filed 10/08/10 Page 7 of 26

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **KRISTIAN M. MCCAIN and KELLY S. MCCAIN f/k/a KELLY S. MCKINNON,** ) ) ) ) **Plaintiff,** ) ) **v.** ) ) **THE UNITED STATES,** ) ) **Defendant.** ) ) | **No. 10-264C** **(Judge Firestone)** |

## DEFENDANT'S MOTION TO DISMISS, IN PART, AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the United States Court of Federal Claims

("RCFC"), defendant, the United States, respectfully requests that the Court dismiss, in part, the

complaint of plaintiffs Kristian M. McCain and Kelly S. McCain (maiden name McKinnon)

("the McCains") for lack of jurisdiction and for failure to state a claim upon which relief can be

granted. Additionally, pursuant to RCFC 56(b), defendant respectfully requests that the Court

grant partial summary judgment in defendant's favor as to plaintiffs' breach of contract claim

because as to that claim there is no genuine issue as to any material fact and we are entitled to

judgment as a matter of law.[1] In support of this motion, we rely upon the complaint, our

proposed findings of uncontroverted fact, the following brief, and exhibits.[2]

---

[1] The United States is filing this motion in lieu of a response to plaintiffs' complaint. In the event that the Court denies any part of this motion, we request that the Court permit the Government to file a response to the complaint within 60 days after such a denial. For purposes of defendant's partial motion to dismiss only, unless otherwise indicated, the United States accepts as true the factual allegations set forth in the complaint. In the event that any part of this motion is denied, however, we reserve the right to contest each and every factual allegation in the complaint.

[2] In the brief below, "Compl. ¶ __" refers to the McCains' complaint (filed Apr. 28, 2010). "DPFUF No. __" refers to defendant's proposed findings of uncontroverted fact (Oct. 8, 2010). "Exh. __" refers to the exhibits attached to this brief. "Francisco Decl. ¶ __" refers to the

## DEFENDANT'S BRIEF

## STATEMENT OF THE QUESTIONS INVOLVED

1) Whether the Court lacks jurisdiction to entertain plaintiffs' claims to the extent they are asserted against defendants other than the United States.

2) Whether the Court lacks jurisdiction to entertain plaintiffs' claims to the extent they sound in tort.

3) Whether the Court lacks jurisdiction to entertain plaintiffs' claims for declaratory or injunctive relief where declaratory relief is the primary focus of plaintiffs' complaint.

4) Whether plaintiffs fail to state a breach of contact claim because they fail to satisfy the pleading requirements of RCFC 9(k).

5) Whether defendant is entitled to summary judgment upon plaintiffs' breach of contract claim where no contract exists between plaintiffs and the Government due to a lack of authority.

6) Whether defendant is entitled to summary judgment upon plaintiffs' breach of contract claim where no contract exists between plaintiffs and the Government due to unilateral mistake.

## STATEMENT OF THE CASE

## I.    Statement Of Facts

For our statement of facts, we respectfully refer the Court to Defendant's Proposed Findings of Uncontroverted Fact, dated October 8, 2010. See generally DPFUF. In this brief, we reference those facts and other informative facts that are necessary to our argument.

In July 1999, plaintiff Kelly McCain (maiden name McKinnon) received a loan made under the Federal Family Education Loan Program for $7,500.00 to attend Northwestern State University. DPFUF No. 1; Francisco Decl. ¶ 9 (Exh. 2); NSLDS Loan History for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 5); accord Compl. ¶ 4 (Exh. 1). Ms. McCain later defaulted on that loan. DPFUF No. 2; Francisco Decl. ¶ 9 (Exh. 2); accord Compl. ¶ 5

Declaration of Mr. Alberto Francisco, Department of Education (Oct. 7, 2010). "Stussie Decl. ¶ __" refers to the Declaration of Mr. Gary P. Stussie, Vangent, Inc. (Oct. 6, 2010).

(Exh. 1). Following the default, United Student Aid Funds, Inc., the loan guarantee agency, paid an insurance claim to the lender. DPFUF No. 2; Francisco Decl. ¶ 9 (Exh. 2); NSLDS Loan History for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 5).

On May 9, 2005, Ms. McCain signed a promissory note to obtain a Federal Direct Consolidation Loan from the United States Department of Education ("DoE"). DPFUF No. 3; Francisco Decl. ¶ 10 (Exh. 2); Promissory Note signed by Kelly McCain (maiden name McKinnon) (May 9, 2005) (Exh. 6). Pursuant to the promissory note, the DoE disbursed $11,706.95 to Ms. McCain. DPFUF No. 3; Francisco Decl. ¶ 10 (Exh. 2). The proceeds from this loan were used to repay the principal, interest, and collection costs owed on her original student loan. DPFUF No. 3; Francisco Decl. ¶ 10 (Exh. 2). The $11,706.95 disbursement became the principal on Ms. McCain's new loan. DPFUF No. 3; Francisco Decl. ¶ 10 (Exh. 2); NSLDS Loan History for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 5).

On May 4, 2007, Ms. McCain defaulted on her new loan. DPFUF No. 4; Francisco Decl. ¶ 11 (Exh. 2); accord Stussie Decl. ¶ 3 (Exh. 3). The DoE assigned the debt to the DoE's Default Resolution Group ("DRG"), entering DRG's database on August 14, 2007. DPFUF No. 5; Francisco Decl. ¶ 11 (Exh. 2); Stussie Decl. ¶ 3 (Exh. 3); FDSL Program Specific Screen R116 for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 7). At the time of the assignment, the balance of the loan was $12,560.29 ($12,124.49 in unpaid principal and $435.80 in accrued interest). DPFUF No. 5; Francisco Decl. ¶ 11 (Exh. 2); Stussie Decl. ¶ 3 (Exh. 3); FDSL Program Specific Screen R116 for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 7). The increased principal was due to the capitalization of interest owed on the loan. DPFUF No. 5; Francisco Decl. ¶ 11 (Exh. 2). The Default Resolution Group Information Center ("DRGIC") is operated by Vangent, Inc. ("Vangent"), a subcontractor hired to handle

3

inbound calls and counsel borrowers on how to remove their accounts from default. DPFUF No. 6; Stussie Decl. ¶ 2 (Exh. 3).

On or about September 1, 2009, the McCains allegedly completed paperwork to submit Ms. McCain's loan for settlement for less than the full sum due. DPFUF No. 7; Compl. ¶ 6 (Exh. 1). On September 16, 2009, the DRGIC received an undated letter from Ms. McCain's spouse, Mr. Kristian McCain, stating that he wished to settle Ms. McCain's debt for $7,500.00. DPFUF No. 7; Francisco Decl. ¶ 13 (Exh. 2); Stussie Decl. ¶ 5 (Exh. 3); Letter from Kristian McCain to Whom It May Concern (undated) (Exh. 8). On October 27, 2009, the DRGIC also received a letter from Senator Mary Landrieu of Louisiana regarding the McCain's debt. DPFUF No. 7; Stussie Decl. ¶ 6 (Exh. 3); Letter from Senator Mary Landrieu to Thomas Kelley, DoE (Oct. 14, 2009) (Exh. 9). On October 29, 2009, the DoE rejected Mr. McCain's offer and countered with an offer of $9,580.00 to settle and satisfy-in-full Ms. McCain's debt. DPFUF No. 8; Francisco Decl. ¶ 14 (Exh. 2); accord Stussie Decl. ¶ 6 (Exh. 3). The McCain's offer, DoE's rejection of that offer, and DoE's counter-offer were all detailed in a November 4, 2009 letter responding to Senator Landrieu. DPFUF No. 8; Francisco Decl. ¶ 15 (Exh. 2); Stussie Decl. ¶ 7 (Exh. 3); Letter from Naomi Randolph, DoE, to Senator Mary Landrieu (Nov. 4, 2009) (Exh. 10).

On December 8, 2009, Mr. McCain called the DRGIC and stated that he had not received a response to his $7,500.00 offer. DPFUF No. 9; Stussie Decl. ¶ 8 (Exh. 3). As a result of the conversation, Daniel Smith, a Vangent Customer Service Representative, ordered a system-generated M95 compromise agreement letter for Ms. McCain's account. DPFUF No. 9; Stussie Decl. ¶ 8 (Exh. 3). The system generated that letter on December 10, 2009. DPFUF No. 9; Francisco Decl. ¶ 16 (Exh. 2); Stussie Decl. ¶ 8 (Exh. 3); Letter from DoE to Kelly McCain

4

(maiden name McKinnon) (Dec. 10, 2009) (Exh. 11).  Mr. Smith incorrectly entered into the letter a compromise amount of $1,980.00 instead of $9,580.00, the amount that DoE had previously approved as a counter-offer to Mr. McCain's offer of $7,500.00.  DPFUF No. 9; Stussie Decl. ¶ 8 (Exh. 3); Francisco Decl. ¶ 16 (Exh. 2); Letter from DoE to Kelly McCain (maiden name McKinnon) (Dec. 10, 2009) (Exh. 11).  Specifically, the December 10, 2009 letter stated that: "This notice confirms our offer to accept $1,980.00 as full settlement and satisfaction of your obligation of this debt."  DPFUF No. 10; Compl. ¶ 8 (Exh. 1); Letter from DoE to Kelly McCain (maiden name McKinnon) (Dec. 10, 2009) (Exh. 11).  The outstanding balance of Ms. McCain's account at the time Mr. Smith sent this letter was $11,980.27 ($11,973.66 in unpaid principal and $6.61 in accrued interest).  DPFUF No. 10; Stussie Decl. ¶ 8 (Exh. 3); see also Letter from Naomi Randolph, DoE, to Senator Mary Landrieu (Nov. 4, 2009) (Exh. 10).  This amount is different from the $12,560.29 previously owed because it was reduced by credits that have been applied to Ms. McCain's account.  DPFUF No. 10; Francisco Decl. ¶ 12 (Exh. 2); Account Transaction Screen R103 for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 12).

As a DoE subcontractor, Vangent's authority to compromise is limited by the Common Services for Borrowers Compromise Guidebook ("Guidebook").  DPFUF No. 11; Stussie Decl. ¶ 9 (Exh. 3); Guidebook (Exh. 4).  Accordingly, Mr. Smith was only authorized to compromise all fees and the lesser of: (1) up to 10 percent off of the combined principal and interest; or (2) principal plus 50 percent of interest.  DPFUF No. 11; Stussie Decl. ¶ 9 (Exh. 3); Guidebook pp. 1-2 (Exh. 4).  Mr. Smith's offer to compromise Ms. McCain's outstanding loan balance of $11,980.27 for $1,980.00 exceeded his compromise authority.  DPFUF No. 11; Guidebook pp. 1-2 (Exh. 4).

On December 17, 2009, the McCain's had a cashier's check made payable to the DoE prepared by the Barksdale Federal Credit Union and mailed it to DoE. DPFUF No. 12; Compl. ¶¶ 8-9 (Exh. 1). On December 21, 2009, the DoE received the McCain's cashier's check for $1,980.00, conditionally endorsed as "pd in full." DPFUF No. 12; Compl. ¶ 11 (Exh. 1); Francisco Decl. ¶ 12 (Exh. 2); Cashier's Check for $1,980 from Kelly McCain (maiden name McKinnon) to the DoE (Dec. 17, 2009) (Exh. 13). The check was cashed on or about December 22, 2009. DPFUF No. 13; Compl. ¶ 14 (Exh. 1); Account Transaction Screen R103 for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 12). Subsequently, the DoE continued to try to collect the McCain's outstanding debt. DPFUF No. 13; Compl. ¶ 12 (Exh. 1).

On March 8, 2010, the DoE received an undated letter from the McCains, which included copies of the December 10, 2009 letter and the McCain's cashier's check for $1,980.00. DPFUF No. 14; Francisco Decl. ¶ 18 (Exh. 2); Letter from Kelly McCain (maiden name McKinnon) to the DoE (undated) (Exh. 14). On March 22, 2010, the DoE sent the McCains a letter apologizing for any confusion created by the December 10, 2009 letter and explaining that the payment of $1,980.00 was not sufficient to satisfy in full Ms. McCain's outstanding debt despite the conditional endorsement. DPFUF No. 15; Compl. ¶¶ 16-20 (Exh. 1); Francisco Decl. ¶ 19 (Exh. 2); Letter from the DoE to Kelly McCain (maiden name McKinnon) (Mar. 22, 2010) (Exh. 15). Moreover, Mr. Smith, the Vangent employee who sent the letter containing the $1,980.00 settlement offer, did so in error. DPFUF No. 15; Compl. ¶¶ 13 and 16 (Exh. 1); Francisco Decl. ¶ 19 (Exh. 2); Stussie Decl. ¶ 8 (Exh. 3). Subsequently, the DoE continued its attempts to collect on Ms. McCain's defaulted student loan.

6

## II.    Proceedings In This Case

On April 28, 2010, the McCains filed the present complaint.  DPFUF No. 16; see generally Compl.  Plaintiffs allege that defendants, Arne Duncan, in his capacity as the Secretary of the DoE, the DoE, and the United States: (1) "made false credit reportings about plaintiffs," Compl. ¶ 21 (Exh. 1); (2) "illegally engaged a collection company to make false credit reportings as well as to harass plaintiffs," Compl. ¶ 22 (Exh. 1); (3) "impermissibly and illegally seized plaintiffs' tax return refund which was less than $10,000, for the last tax year," Compl. ¶ 23 (Exh. 1); and (4) "continued to claim plaintiffs owe monies which are the subject of the settled and only account either plaintiff ever had with defendants."  Compl. ¶ 24 (Exh. 1).

Plaintiffs now seek:  (1) "declaratory relief including Judgment finding that the subject account is fully settled and that no monies are owed by plaintiffs to defendants," Compl. ¶ 26 (Exh. 1); (2) "injunctive relief including Judgment commanding defendants to retract and cease reporting false, negative information in the form of credit and collection reportings about plaintiff[s] which suggest that plaintiff[s] have any balance owed to defendants," Compl. ¶ 27 (Exh. 1); (3) "injunctive relief including Judgment commanding defendants to retract and cease all collection activities against plaintiffs including seizures, credit reportings, and contracts, including those which suggest that plaintiff[s] have any balance owed to defendants," Compl. ¶ 28 (Exh. 1); (4) "declaratory relief finding that defendants improperly seized plaintiffs' tax refund and ordering return of those monies to plaintiffs," Compl. ¶ 29 (Exh. 1); (5) "injunctive relief including Judgment ordering defendants to return to plaintiffs the improperly seized tax refund monies owed to plaintiffs," Compl. ¶ 30 (Exh. 1); (6) "sustained damages as a result of the breach of contract by defendants," Compl. ¶ 31 (Exh. 1); and (7) "pain and suffering, aggravation, embarrassment, inconvenience, lost economic opportunity, loss of incidental time,

7

frustration, emotional distress, mental anguish, fear of personal and financial safety and security, [and] personal and mental injuries." Compl. ¶ 32 (Exh. 1).

## III.   Scope Of Defendant's Motion To Dismiss, In Part, And Motion For Partial Summary Judgment

The following brief addresses all of the issues raised in plaintiffs' complaint. Specifically, in Part I of the Argument section below, we address the applicable legal standard for a motion to dismiss under both RCFC 12(b)(1) and (6), as well as under RCFC 56(b).

In Part II of the Argument section below, we demonstrate that certain of plaintiffs' claims should be dismissed because: (1) this Court lacks jurisdiction to hear claims asserted against parties other than the United States; (2) this Court lacks jurisdiction to hear claims sounding in tort; and (3) this Court lacks jurisdiction to hear claims of declaratory or injunctive relief in certain situations, including the situation presented in this case.

In Part III of the Argument section below, we demonstrate that plaintiffs' breach of contract claim should be dismissed because plaintiffs fail to state a claim upon which relief may be granted because they failed to satisfy the pleading requirements of RCFC 9(k).

In Part IV of the Argument section below, we establish that defendant is entitled to summary judgment upon plaintiffs' breach of contract claim because, for two reasons, no contract existed between plaintiffs and the Government.[3]  First, the Vangent employee in the present case did not have the authority to bind the Government to a contract with such a low settlement offer. Second, the Vangent employee in the present case made a mistake in offering such a low settlement amount. If the Court grants defendant's motion to dismiss certain of

---

[3] Plaintiffs' complaint also appears to include assertions relating to the DoE's seizure of certain tax refund monies that plaintiffs believe they should be paid. See Compl. ¶¶ 29-30. These assertions are not in and of themselves claims, but rather sums that offset the amount owed DoE for plaintiffs' defaulted loan. Francisco Decl. ¶12; Compl. ¶ 23.

plaintiffs' claims as well as defendant's motion for partial summary judgment as to plaintiffs' breach of contract claim, no claims will remain.

## ARGUMENT

### I.      Legal Standards

#### A.      RCFC 12(b)(1)

Under RCFC 12(b)(1), the Court must dismiss claims where subject matter jurisdiction is lacking. Id. Plaintiffs bear the burden of proving that the Court has jurisdiction over their case by a preponderance of the evidence. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780 (1936); Reynolds v. Army & Air Force Exch. Serv., 849 F.2d 749, 747 (Fed. Cir. 1988). Moreover, when considering a RCFC 12(b)(1) motion, the Court may look beyond the pleadings and "inquire into jurisdictional facts." Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

#### B.      RCFC 12(b)(6)

Under RCFC 12(b)(6), the Court must dismiss claims for failure to state a claim upon which relief may be granted "when the facts asserted by the claimant do not entitle him [or her] to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The Court must accept "all well-pleaded factual allegations as true and draw[] all reasonable inferences in the claimant's favor." Lindsay, 295 F.3d at 1257. The Court must also determine whether the well-pled facts "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

## C.    RCFC 56

Under RCFC 56, summary judgment as to any claim is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See RCFC 56(c); see also Celotex Corp. v. United States, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248; see also Sweats Fashions, Inc. v. Pennill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987). Thus, when the record as a whole would not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); accord Celotex, 477 U.S. at 327. A fact is material if it could affect the outcome of the suit, and its materiality is determined by the substantive law applicable to the case. See, e.g., Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989).

Initially, we need only inform the Court of the basis for our motion and identify those portions of the pleadings, record, and our affidavits that demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. We need not support our motion by negating plaintiffs' claims or by demonstrating the absence of a genuine issue. We only must show "that there is an absence of evidence to support [plaintiffs'] case," i.e., an absence of evidence as to a material fact upon which plaintiffs bear the burden of proof. Celotex, 477 U.S. at 323-25; Sweats Fashions, 833 F.2d at 1563; DJ Manufacturing Corporation v. United States, 86 F.3d 1130 (Fed Cir. 1996). We are entitled to summary judgment if plaintiffs then fail to come forward with sufficient evidence to establish that there is a genuine issue for trial. See Anderson, 477 U.S. at 247-48; Sweats Fashions, 833 F.2d at 1563.

**II.** **This Court Lacks Jurisdiction To Entertain Certain Of Plaintiffs' Claims**

    **A.** **The Court Should Dismiss Plaintiffs' Claims Against Defendants Other Than The United States For Lack Of Jurisdiction**

Plaintiffs assert their claims against three defendants: (1) Arne Duncan, in his capacity as the Secretary of the DoE; (2) the DoE; and (3) the United States. Compl. ¶ 2 (Exh. 1). It is well settled that the Court of Federal Claims cannot entertain claims against defendants other than the United States. See e.g., United States v. Sherwood, 312 U.S. 584, 588 (1941); Stephenson v. United States, 58 Fed. Cl. 186, 189 (2003). Accordingly, to the extent that plaintiffs assert claims against the Secretary or the DoE, the Court should dismiss those claims for lack of jurisdiction. The only proper defendant in the Court of Federal Claims is the United States.[4]

    **B.** **The Court Should Dismiss Plaintiffs' Tort Claims For Lack Of Jurisdiction**

The Tucker Act expressly states that the "United States Court of Federal Claims shall have jurisdiction . . . in cases *not sounding in tort*." 28 U.S.C. § 1491(a)(1)(emphasis added). See also Keene Corp. v. United States, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims."); Flowers v. United States, 80 Fed. Cl. 201, 214 (2008) ("[P]laintiff's allegations of emotional distress and anguish, which also sound in tort, fall outside the jurisdiction of the Court of Federal Claims."); Pratt v. United States, 50 Fed. Cl. 469, 482 (2001) ("The court lacks jurisdiction to award plaintiff's prayer for damages for emotional distress and pain and suffering."); Curry v. United States, 221 Ct. Cl. 741, 609 F.2d 980, 982-83

---

[4] On a related note, it is unclear why Ms. McCain's husband, Mr. Kristian M. McCain, is named as a plaintiff in this litigation. Ms. McCain was the sole recipient of the 1999 student loan on which she defaulted as well as the sole recipient of the 2005 consolidation loan (the subject of this litigation) on which she defaulted. The DoE has been attempting to collect on a debt belonging to Ms. McCain only. And the relief plaintiffs seek, although primarily declaratory in nature, see infra, would be an order from this Court declaring that Ms. McCain's debt to the DoE is satisfied in full. If anything, Mr. McCain has acted as Ms. McCain's agent in negotiations with the DoE. But, to the extent there is any proper plaintiff in this litigation, Ms. McCain is the only such plaintiff. The Court should dismiss Mr. McCain as a named plaintiff in this litigation.

(1979) ("[H]ere plaintiff's suit is not against individuals but against the United States, for alleged emotional distress, anguish, and humiliation. These are torts over which we absolutely have no jurisdiction, as made explicit by the Tucker Act.").

Accordingly, the Court does not have jurisdiction over plaintiffs' tort claims, which include: "pain and suffering, aggravation, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, [and] personal and mental injuries." Compl. ¶ 32 (Exh. 1). Nor does the Court have jurisdiction over any of plaintiffs' other claims to the extent they may sound in tort. See, e.g., Compl. ¶¶ 21, 22, 27, and 28 (allegations related to credit reportings) (Exh. 1). The Court should therefore dismiss plaintiffs' tort claims for lack of jurisdiction.[5]

## C.     The Court Should Dismiss Plaintiffs' Declaratory And Injunctive Relief Claims For Lack Of Jurisdiction

As a general rule, the Tucker Act does not provide independent jurisdiction over claims for equitable relief. Betz v. United States, 40 Fed. Cl. 286, 291 (1998); Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997). Congress has amended the Tucker Act to create two exceptions to this general rule, only one of which could possibly apply to the present case.[6] In 1972, Congress amended 28 U.S.C. § 1491:

---

[5] Similarly deficient is plaintiffs' invocation of this Court's jurisdiction under 28 U.S.C. § 1331; the Little Tucker Act, 28 U.S.C. § 1346(a)(2); and the supplemental jurisdiction statute, 28 U.S.C. § 1367. See Compl. ¶ 3. Those provisions do not constitute grants of jurisdiction to this Court because their application is expressly limited to the Federal district courts. See Joslyn v. United States, 90 Fed. Cl. 161, 167 (2009); Hall v. United States, 69 Fed. Cl. 51, 56-57 (2005).

[6] Not applicable to this case, the second exception – enacted by the Alternative Dispute Resolution Act of 1996 – gives the Court of Federal Claims the ability to "award any relief that the Court considers proper, including declaratory and injunctive relief" in "an action by an interested party to a solicitation by a Federal agency for bids or proposals for proposed contract or to a proposed award or the award of a contract or any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b).

12

> To provide an entire remedy and to complete the relief afforded by the
> judgment, the Court may, *as an incident of and collateral to* any such
> judgment, issue orders directing restoration to office or position,
> placement in appropriate duty or retirement status, and correction of
> application records, and such orders may be issued to any appropriate
> official of the United States.

28 U.S.C. § 1491(2)(emphasis added). The Court has interpreted "as an incident of and

collateral to" to limit the Court's equitable powers to situations where equitable relief is "tied

and subordinate to a money judgment." James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998).

    For example, the Court has the power to provide equitable relief "in cases where an audit

or some other procedure is necessary to arrive at a money judgment." Legal Aid Soc'y of New

York v. United States, 92 Fed. Cl. 285, 301 (2010). "The Court [] does not have jurisdiction to

issue [a] declaratory judgment [or injunctive relief], where such relief is the primary focus of the

suit." Thorndike v. United States, 72 Fed. Cl. 580, 583 (2006). Thus, the dispositive question is

"whether the declaratory [or injunctive] relief sought by the plaintiff is the primary or collateral

focus of his [or her] suit." Rice v. United States, 31 Fed. Cl. 156, 164 (1994).

    This Court has previously found jurisdiction lacking in several cases where plaintiffs'

primary goals were equitable. See e.g., Thorndike, 72 Fed. Cl. at 583-83 (finding no jurisdiction

where the plaintiff's primary goals were orders related to relief from paying federal income

taxes); Rice, 31 Fed. Cl. at 164 (finding no jurisdiction where plaintiff's primary goal was

retroactive retirement from the military); Doko Farms v. United States, 13 Cl. Ct. 48, 59 (1987)

(finding no jurisdiction where plaintiff's primary goals were orders related to extinguishing

plaintiff's alleged debt to the Government).

    At its core, the present suit is about plaintiffs' attempt to secure a declaratory judgment

freeing Ms. McCain from having to pay the outstanding balance on her defaulted student loan.

See Compl. ¶ 26 (seeking "declaratory relief including Judgment finding that the subject account

is fully settled and that no monies are owed by plaintiffs to defendants") (Exh. 1). The Court does not have jurisdiction to entertain plaintiffs' claims for declaratory or injunctive relief because plaintiffs' primary goal is equitable in nature. Plaintiffs' claims for monetary damages, see Compl. ¶¶ 31-32 (Exh. 1), which include plaintiffs' improper tort claims, see supra, and insufficient breach of contract claims, see infra, are at best collateral to plaintiffs' primary equitable claim. Because declaratory relief is the primary focus of plaintiffs' suit and that requested relief is not incident of or collateral to monetary claims, the Court should dismiss plaintiffs' claims for declaratory and injunctive relief for lack of jurisdiction.

**III.    The Court Should Dismiss Plaintiffs' Breach Of Contract Claim For Failure To State A Claim Upon Which Relief May Be Granted Because Plaintiffs Did Not Adhere To The Pleading Requirements Of RCFC 9(k)**

Plaintiffs' complaint asserts a claim for "breach of contract," but fails to reference an underlying contract. Compl. ¶ 31 (Exh. 1). Pursuant to RCFC 9(k), plaintiffs are required to "identify the substantive provisions of the contract or treaty on which the party relies[;] in lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions." RCFC 9(k). Not only did plaintiffs fail to identify the substantive provisions of a contract, they failed to identify any contract whatsoever. If only because plaintiffs failed to comply with the pleading requirements of RCFC 9(k), the Court should dismiss plaintiffs' breach of contract claim for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6).

As plaintiffs' other claims are not appropriately before this Court, see supra, the dismissal of plaintiffs' breach of contract claim leaves nothing left over which the Court could take jurisdiction. Accordingly, plaintiffs' complaint can be dismissed in its entirety without considering defendant's motion for partial summary judgment. See infra.

14

**IV.**     **The Court Should Grant Summary Judgment In Defendant's Favor As To Plaintiffs' Breach Of Contract Claim Because No Contract Exists Between Plaintiffs And The Government**

Assuming *arguendo* that plaintiffs' alleged "contract" is the alleged settlement agreement between the McCains and the DoE, the Court should grant summary judgment in defendant's favor as to plaintiffs' breach of contract claim. For at least two reasons, no contract between plaintiffs and the Government exists. First, the record evidence demonstrates that Mr. Smith, the Vangent employee who sent the McCains the December 10, 2009 letter, lacked the authority to bind the Government to a contract with such a low settlement offer. Second, even if Mr. Smith did have such authority, the record evidence demonstrates that any resultant contract would be void under the doctrine of unilateral mistake. Accordingly, defendant is entitled to judgment as a matter of law on plaintiffs' breach of contract claim because there is no genuine issue as to any material fact regarding the existence of a contract between plaintiffs and the Government.

**A.**     **The Vangent Employee Lacked The Authority To Bind The Government To The Apparent Contract**

"It has long been established that the Government cannot be bound by the unauthorized acts of its agents." Hall v. United States, 19 Cl. Ct. 558, 559 (1990). "It is not enough that a person may appear to have authority to enter into an agreement on behalf of the Government; to bind the Government, a person must have actual, delegated authority." Id. "This is so even though the agent may have been unaware of the limitations upon his or her authority." Id. "Moreover, plaintiffs bear the burden of establishing that their contract was entered into by a person having authority to bind the Government." Id. at 559-60.

Hall is strikingly similar to the present case. In Hall, a Government employee accidentally sold an "F-100 jet engine unified fuel control" at a Government surplus auction. Id. The Air Force neither intended to sell the $167,553.00 part, nor should have the unwitting

Government employee accepted $15.00 for it. Id. At the Air Force's request, the purchasers returned the part, along with a $167,550.00 request for reimbursement. Id. The Air Force denied the purchasers' request, prompting a Fifth Amendment takings suit. Id. In deciding that suit, the Court of Federal Claims held that no contract for sale existed between the Government and the purchasers because the Government employee who accidentally auctioned off the part lacked the authority to do so. Id. at 560.

Like the employee in Hall, Mr. Smith, the Vangent employee in the present case, did not have the authority to bind the Government to a contract with such a low settlement offer. Mr. Smith sent the McCains a letter on December 10, 2009 containing an offer to settle Ms. McCain's debt for only $1,980.00. DPFUF No. 9; Francisco Decl. ¶ 16 (Exh. 2); Stussie Decl. ¶ 8 (Exh. 3); Letter from DoE to Kelly McCain (maiden name McKinnon) (Dec. 10, 2009) (Exh. 11). At the time, the outstanding balance of Ms. McCain's account was $11,980.27 ($11,973.66 in unpaid principal and $6.61 in accrued interest). DPFUF No. 10; Stussie Decl. ¶ 8 (Exh. 3); see also Letter from Naomi Randolph, DoE, to Senator Mary Landrieu (Nov. 4, 2009) (Exh. 10). However, the Guidebook, which sets forth the compromise authority for DoE subcontractors like Vangent, did not give Mr. Smith the compromise authority to make such a low settlement offer. DPFUF No. 11; Stussie Decl. ¶ 9 (Exh. 3); Guidebook pp. 1-2 (Exh. 4). In fact, the Guidebook prohibited him from doing so by limiting his compromise authority to the lesser of up to ten percent off the combined principal and interest or principal plus fifty percent interest. DPFUF No. 11; Guidebook pp. 1-2 (Exh. 4). Mr. Smith's offer in the December 10, 2009 letter constituted a discount of approximately eight-three percent off the combined principal and interest of Ms. McCain's loan. Compare (1) Letter from DoE to Kelly McCain (maiden name McKinnon) (Dec. 10, 2009) (offering $1,980.00 to settle loan) (Exh. 11) and (2) Stussie Decl. ¶ 8

16

(loan balance of $11,980.27) (Exh. 3). An 83-percent discount dramatically exceeded Mr.

Smith's compromise authority. DPFUF No. 11; Stussie Decl. ¶ 9 (Exh. 3); Guidebook pp. 1-2

(Exh. 4). Because Vangent lacked the authority to bind the Government to a contract with such a

low settlement offer, no contract between plaintiffs and the Government exists. Hall, 19 Cl. Ct.

at 560.

## B.    The Alleged Contract Is Void Under The Doctrine Of Unilateral Mistake

According to the doctrine of unilateral mistake, a contract is void[7] when there is a:

> (1) mistake by one party, not bearing the risk of such mistake, as the basic
> assumption on which he made the contract; (2) that has a material effect on the
> agreed upon exchange of performance; and (a) the effect of the mistake is such
> that enforcement of the contract would be unconscionable; or (b) the other party
> to the contract has reason to know of the mistake.

Northrop Grumman Corp. v. United States, 47 Fed. Cl. 20, 91 (2000). Again, Hall is strikingly

similar to the present case. In Hall, the Court held that, even if the Government employee had

the authority to auction off the "F-100 jet engine unified fuel control," any ensuing contract was

void under the doctrine of unilateral mistake. Hall, 19 Cl. Ct. at 560.

As in Hall, the present case satisfies the requirements of the doctrine of unilateral

mistake. First, Mr. Smith made a mistake, not bearing the risk of such mistake, as to the basic

assumption on which the contract was made. Namely, Mr. Smith assumed that his December 10,

2009 letter contained a reasonable proposed settlement offer, when in fact in preparing the letter

Mr. Smith had incorrectly entered into the letter a compromise amount of $1,980.00 instead of

$9,580.00, the amount that DoE had previously approved as a counter-offer to Mr. McCain's

offer of $7,500.00. DPFUF No. 9; Stussie Decl. ¶ 8 (Exh. 3); Francisco Decl. ¶ 16 (Exh. 2);

Letter from DoE to Kelly McCain (maiden name McKinnon) (Dec. 10, 2009) (Exh. 11). On

---

[7] A "void contract" is a "contract that is of no legal effect, so that there is really no contract in existence at all." Black's Law Dictionary (8th ed. 2004).

more than one occasion, Vangent informed the McCains of this mistake. DPFUF No. 15;
Compl. ¶¶ 13, 16-20 (Exh. 1); Francisco Decl. ¶ 19 (Exh. 2); Stussie Decl. ¶ 8 (Exh. 3); Letter
from the DoE to Kelly McCain (maiden name McKinnon) (Mar. 22, 2010) (Exh. 15).

Second, Mr. Smith's mistake had a material effect on the agreed exchange of
performance. That is, Vangent would not have entered into an agreement with Ms. McCain had
Vangent been aware that the December 10, 2009 letter contained such a low settlement offer.
This point is evidenced by the fact that, prior to sending the December 10, 2009 letter, DoE had
rejected Mr. McCain's offer of $7,500.00, and put forth a counter-offer of $9,580.00. DPFUF
No. 8; Francisco Decl. ¶¶ 13-15 (Exh. 2); Stussie Decl. ¶¶ 6-7 (Exh. 3); Letter from Naomi
Randolph, DoE, to Senator Mary Landrieu (Nov. 4, 2009) (Exh. 10). Moreover, Ms. McCain
only entered into an agreement with Vangent because the December 10, 2009 letter contained
such a low settlement offer.

Third, the effect of Mr. Smith's mistake is such that enforcement of the contract would be
unconscionable. If the Court enforced the alleged contract, Ms. McCain would receive an 83
percent discount on her defaulted loan balance. For context, enforcing the contract would mean
a 73 percent discount on the amount Ms. McCain originally borrowed, $7,500.00, over a decade
ago in 1999. DPFUF No.1.

Additionally, Ms. McCain had reason to know of the mistake. Again, just over a month
before receiving the December 10, 2009 letter, DoE rejected Ms. McCain's husband's settlement
offer of $7,500.00, instead offering to accept $9,580.00. DPFUF No. 8; Francisco Decl. ¶¶ 13-
15 (Exh. 2); Stussie Decl. ¶¶ 6-7 (Exh. 3); Letter from Naomi Randolph, DoE, to Senator Mary
Landrieu (Nov. 4, 2009) (Exh. 10). It would strain credulity if the McCains were to suggest that
they did not realize a mistake had been made when they received an offer of $1,980.00 just over

18

a month after DoE rejected a $7,500.00 offer and made a $9,580.00 counter-offer.  Thus, even if

Mr. Smith had the authority to bind the Government to the alleged contract, such a contract

would be void under the doctrine of unilateral mistake.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant our motion to

dismiss, in part, and our motion for partial summary judgment.

Respectfully submitted,

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

/s/ Russell J. Upton
RUSSELL J. UPTON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn:  Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C.  20530
Tel.: (202) 305-3634
Fax:  (202) 514-8624
Russell.J.Upton@usdoj.gov

October 8, 2010                           Attorneys for Defendant

## CERTIFICATE OF FILING

I hereby certify that on this 8th day of October 2010, a copy of the foregoing

"DEFENDANT'S MOTION TO DISMISS, IN PART, AND DEFENDANT'S MOTION FOR

PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this

filing will be sent to all parties by operation of the Court's electronic filing system. Parties may

access this filing through the Court's system.

/s/ Russell J. Upton
RUSSELL J. UPTON