IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| KRISTIAN M. MCCAIN and KELLY<br>S. MCCAIN f/k/a KELLY S. MCKINNON,<br><br>                  Plaintiff,<br><br>           v.<br><br>THE UNITED STATES,<br><br>                  Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

No. 10-264C
(Judge Firestone)

## DEFENDANT'S MOTION TO DISMISS, IN PART, AND
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### INDEX TO EXHIBITS

**Document**                                                                 **Exhibit Number**

Plaintiffs' Complaint (filed Apr. 28, 2010) ...............................................................................1

Declaration of Mr. Alberto Francisco, U.S. Department of Education
(Oct. 7, 2010) ............................................................................................................................2

Declaration of Mr. Gary P. Stussie, Vangent, Inc. (Oct. 6, 2010). ................................................3

Common Services for Borrowers Compromise Guidebook ............................................................4

NSLDS Loan History for Kelly McCain (maiden name McKinnon)
(Sept. 27, 2010)..........................................................................................................................5

Promissory Note signed by Kelly McCain (maiden name McKinnon)
(May 9, 2005)..............................................................................................................................6

FDSL Program Specific Screen R116 for Kelly McCain (maiden name
McKinnon) (Sept. 27, 2010) ......................................................................................................7

Letter from Kristian McCain to Whom It May Concern (undated)................................................8

Letter from Senator Mary Landrieu to Thomas Kelley, U.S. Department
of Education (October 14, 2009) ...............................................................................................9

Letter from Naomi Randolph, U.S. Department of Education, to Senator
Mary Landrieu (November 4, 2009) .................................................................................................10

Letter from U.S. Department of Education to Kelly McCain (maiden name
McKinnon) (December 10, 2009) ......................................................................................................11

Account Transaction Screen R103 for Kelly McCain (maiden name McKinnon)
(Sept. 27, 2010) .................................................................................................................................12

Cashier's Check for $1,980 from Kelly McCain (maiden name McKinnon)
to the U.S. Department of Education (December 17, 2009) .............................................................13

Letter from Kelly McCain (maiden name McKinnon) to the U.S. Department
of Education (undated) ......................................................................................................................14

Letter from the U.S. Department of Education to Kelly McCain (maiden name
McKinnon) (March 22, 2010) ...........................................................................................................15

# EXHIBIT 1

# ORIGINAL

070 885
**FILED**

APR 28 2010

U.S. COURT OF
FEDERAL CLAIMS

UNITED STATES DISTRICT COURT
COURT OF FEDERAL CLAIMS

KRISTIAN M. MCCAIN and KELLY
S. MCCAIN F/K/A KELLY S. MCKINNON,
Plaintiff,

Versus

Civil Action No.

ARNE DUNCAN, UNITED STATES
SECRETARY OF EDUCATION, U.S.
DEPARTMENT OF EDUCATION and
THE UNITED STATES OF AMERICA
Defendant.

# 10 - 264  C

## COMPLAINT

NOW INTO COURT, through undersigned counsel, come KRISTIAN M. MCCAIN and

KELLY S. MCCAIN F/K/A KELLY S. MCKINNON, Plaintiffs in the above entitled and

captioned matter, who respectfully pray for Judgment of this Honorable Court against

defendants. as set forth in the following complaint, as follows:

### PLAINTIFF

1.

Plaintiffs, KRISTIAN M. MCCAIN and KELLY S. MCCAIN F/K/A KELLY S.

MCKINNON, are major domiciliaries of Shreveport. Caddo Parish, Louisiana.

### DEFENDANTS

2.

Made Defendants herein are:

[a]    ARNE DUNCAN, UNITED STATES SECRETARY OF EDUCATION, in his official

capacity as Secretary of Education of the United States Government and an indispensable

party to this action; and

[b]     U.S. DEPARTMENT OF EDUCATION, a department of the executive branch of the
United States Government and an indispensable party to this action; and

[c]     THE UNITED STATES OF AMERICA, is the governing body of this country and an
indispensable party to this action.

For purposes of this action and claims for relief, all defendants will be referred to herein
collectively as "defendants."

## JURISDICTION OF THE COURT

3.

Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises
under federal law. 28 U.S.C. 1331, 1346[a][2], 1491. Plaintiff also asserts actions under states'
laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff
respectfully requests that this Honorable Court exercise supplemental jurisdiction over said
claims. 28 U.S.C. 1367. The Tucker Act grants jurisdiction to the U.S. Court of Federal Claims
over, inter alia, "any claim against the United States founded ... upon any express or implied
contract with the United States." 28 U.S.C. § 1491(a)(1). Jurisdiction under the Tucker Act is
limited to claims for monetary relief, Richardson v. Morris, 409 U.S. 464, 465, 93 S.Ct. 629, 34
L.Ed.2d 647 (1973) (per curiam), with the following narrow exception: To provide an entire
remedy and to complete the relief afforded by the judgment, the court may, as an incident of and
collateral to any such judgment, issue orders directing .... correction of applicable records, and
such orders may be issued to any appropriate official of the United States.

## FACTUAL BASIS AND CLAIMS FOR RELIEF

4.

Plaintiff KELLY S. MCCAIN F/K/A KELLY S. MCKINNON had a student loan prior to

her marriage with co-plaintiff.

5.

Defendants sought collection of the delinquent student loan from plaintiffs.

6.

On or about September 1, 2009, Plaintiffs completed paperwork ["Request to Negotiate a Compromise Settlement of Your Debt"] required to submit the student loan account for settlement for less than the full sum due.

7.

Based on plaintiffs' submission of paperwork for approval of a settlement of the subject student loan, defendants responded with approval of the proposed compromise and defendants penned a letter to plaintiff KELLY S. MCCAIN F/K/A KELLY S. MCKINNON.

8.

On December 10, 2009, defendants wrote plaintiff KELLY S. MCCAIN F/K/A KELLY S. MCKINNON and indicated that "THIS NOTICE CONFIRMS OUR OFFER TO ACCEPT $1,980.00 AS FULL SETTLEMENT AND SATISFACTION OF YOUR OBLIGATION ON THIS DEBT ...".

9.

Based on the clear, written terms of the offer, Plaintiffs immediately [on December 17, 2009] drafted monies from their joint bank account and had a cashier's check made payable to the US Dep of Education prepared by Barksdale Federal Credit Union..

10.

Plaintiffs' acceptance communication along with the check were transmitted via US Mails, Certified Mail Return Receipt, to defendants as stated in the offer.

11.

Defendants received the check and acceptance of the offer and signed for receipt of the mail on December 21, 2009.

12.

Despite receipt, defendants sent a bill to plaintiffs, demanding $11,978.80.

13.

Plaintiff immediately called defendants to inquire and plaintiff was advised by a representative and employee of defendants that defendants had made a "mistake" and now wanted to renege.

14.

Defendants had cashed the plaintiffs' check and taken in her monies, as reflected on later billing statements which defendants persisted in sending and demanding payment of $11,978.80 and more.

14.

On January 14, 2010, plaintiffs wrote defendants to reiterate that the account was settled and that defendants should cease collection activities and plaintiffs sent documentary proofs to defendants as to the settlement.

15.

Defendants continued ro send billing statements to plaintiffs and plaintiffs advised defendants that the account was properly settled on terms set forth in defendants' offer to plaintiff.

16.

On March 22, 2010, a representative and employee of defendants wrote plaintiff and

acknowledged plaintiffs' position but claimed that defendants' offer "was sent in error" and referred to the settlement compromise as "confusion."

17.

On March 22, 2010, a representative and employee of defendants wrote plaintiff and acknowledged that defendants received the "paid in full" settlement payment check in the sum of $1,980.00.

18.

On March 22, 2010, a representative and employee of defendants wrote plaintiff and stated that the payment "was no benefit to the Department..."

19.

On March 22, 2010, a representative and employee of defendants wrote plaintiff and admitted that plaintiffs' check was conditionally endorsed.

20.

On March 22, 2010, a representative and employee of defendants wrote plaintiff and demanded that plaintiffs pay $10,004.23

21.

Since January, 2010, defendants have made false credit reportings about plaintiff.

22.

Since January, 2010, defendants have illegally engaged a debt collection company to make false credit reportings as well and to harass plaintiffs.

23.

Since January, 2010, defendants have impermissibly and illegally seized plaintiffs' tax return refund which was less than $10,000, for the last tax year.

24.

Since January, 2010, defendants have continued to claim plaintiffs owe monies which are the subject of the settled and only account either plaintiff ever had with defendants.

25.

Plaintiffs show that the subject account is settled and La. CC art. 2036 governs the compromise and settlement.

26.

Plaintiffs seek declaratory relief including Judgment finding that the subject account is fully settled and that no monies are owed by plaintiffs to defendants.

27.

Plaintiffs seek injunctive relief including Judgment commanding defendants to retract and cease reporting false, negative information in the form of credit and collection reportings about plaintiff[s] which suggest that plaintiff[s] have any balance owed to defendants.

28.

Plaintiffs seek injunctive relief including Judgment commanding defendants to retract and cease all collection activities against plaintiffs including seizures, credit reportings, and contacts, including those which suggest that plaintiff[s] have any balance owed to defendants.

29.

Plaintiffs seek declaratory relief finding that defendants improperly seized plaintiffs' tax refund and ordering return of those monies to plaintiffs.

30.

Plaintiffs seek injunctive relief including Judgment ordering defendants to return to plaintiffs the improperly seized tax refund monies owed to plaintiffs.

31.

Plaintiffs have likewise sustained damages as a result of the breach of contract by defendants.

32.

Defendants are liable unto plaintiff for all actual, statutory, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, adverse action, costs and time of repairing their credit, pain and suffering, aggravation, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, personal and mental injuries, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

WHEREFORE PLAINTIFFS, KRISTIAN M. MCCAIN and KELLY S. MCCAIN F/K/A KELLY S. MCKINNON, PRAY that after all due proceedings be had there be judgment herein in favor of Plaintiffs and against Defendants, jointly, severally and in solido, for all reasonable damages sustained by Plaintiffs including but not limited to actual damages, compensatory damages, out-of-pocket expenses, adverse action, costs and time of repairing her credit, pain and suffering, aggravation, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, personal and mental injuries, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid; and that there be judgment for declaratory and injunctive relief as requested herein above.

FURTHER, Prays for all such additional, general and equitable relief as may be necessary and proper in the premises.

Respectfully submitted,

Bodenheimer, Jones & Szwak, LLC

By: _____

       David A. Szwak, La.BR #21157, TA
       416 Travis Street, Ste. 1404
       Mid South Tower
       Shreveport, Louisiana 71101
       (318) 424-1400
       FAX  221-6555

**Counsel for Plaintiffs**

# EXHIBIT 2

## UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| KRISTIAN M. MCCAIN and KELLY S. MCCAIN f/k/a KELLY S. MCKINNON, | * * * * * * | No. 10-264C |
| Plaintiff, | * * | |
| v. | * * | |
| THE UNITED STATES | * * | |
| Defendant. | * * | |

### DECLARATION OF ALBERTO FRANCISCO

In accordance with 28 U.S.C. §1746, Alberto Francisco, of San Francisco, California, states as follows:

### JOB POSITION AND RESPONSIBILITIES

1. I am a Senior Loan Analyst in Processing Division, Litigation Support of the U.S. Department of Education ("DoE"). I have held this position since 1994.

2. As a Senior Loan Analyst, my responsibilities are to assist the United States Attorney's Offices with Federal District Court and Bankruptcy Court litigation involving student loans. The litigation support provided includes, but is not limited to, the following: (1) provide background information about the particular Loan Program and the various types of Loans authorized by Title IV of the Higher Education Act (HEA) of 1965, as amended; (2) research and provide information about a borrower's loan history (including repayment history and forbearance/deferment history); (3) prepare responses to discovery requests (i.e., interrogatories and requests for production of documents); (4) provide information regarding repayment options and/or administrative discharge options available to the borrower; (5)

provide testimony on behalf of DoE either in person or by submission of a declaration; and
(6) facilitate settlement.

3.  To assist me in fulfilling the aforementioned responsibilities, I have access to a computer
    system that contains the loan history, records of payment transactions, collection actions,
    deferment/forbearance history, telephonic/written contacts, etc. The records are created
    pursuant to DoE's regular practice of making and keeping such records and are kept in the
    regular course of DoE's administration of the loan.

4.  The information contained in this declaration is based upon my review of the computer
    records and my knowledge of the laws, regulations and procedures governing DoE's Loan
    Programs.

## FEDERAL FAMILY EDUCATION LOAN PROGRAM

5.  The Federal Family Education Loan (FFEL) Program is authorized under Title IV, Part D of
    the Higher Education Act of 1965, as amended, 20 U.S.C. § 1071 et seq. Under the FFEL
    Program, loans are originated by banks or other lending institutions and are guaranteed by
    State or non-profit guarantors and reinsured by DoE.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

6.  The William D. Ford Direct Loan Program (Direct Loan Program) is authorized under Title
    IV, Part D of the Higher Education Act of 1965, as amended 20 U.S.C. § 1087a et seq.
    Loans under the Direct Loan Program first became available on July 1, 1994. Under the
    Direct Loan Program, DoE provides funds directly to borrowers.

7.  Four types of loans are offered under the Direct Loan Program: Subsidized Direct Stafford,
    Unsubsidized Direct Stafford, Direct PLUS (Parent Loan for Undergraduate Students), and
    Direct Consolidation Loans.

2

8.  The Federal Direct Consolidation Loan (FDCL) Program enables borrowers to apply for a
    Loan to consolidate outstanding educational loans made pursuant to Title IV of the Higher
    Education Act of 1965, as amended.

## LOAN HISTORY OF KELLY MCKINNON

9.  According to information reported to DoE's database of federal student loans, the National
    Student Loan Data System (NSLDS) computer printout, in 1999, the Ms. McCain received a
    loan made under the Federal Family Education Loan Program in the amount of $7,500.00 to
    attend Northwestern State University. The loan was later declared in default, and United
    Student Aid Funds, Inc., the guaranty agency, paid an insurance claim to the lender. NSLDS
    Loan History for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 5).

10. Our records indicate that on May 9, 2005, Ms. McCain signed for FDCL in the amount of
    $11,706.95. The proceeds from Ms. McCain's FDCL were used to repay principal, interest,
    and collection costs owed on her existing loan. The amount disbursed became the new
    principal balance of the FDCL. NSLDS Loan History for Kelly McCain (maiden name
    McKinnon) (Sept. 27, 2010) (Exh. 5); Promissory Note signed by Kelly McCain (maiden
    name McKinnon) (May 9, 2005) (Exh. 6).

11. Interest owed on the FDCL was capitalized, increasing the principal balance. The loan was
    declared in default on May 4, 2007, and DoE's Direct Loan Servicing Center assigned this
    debt to DoE's Default Resolution Group. The loan entered our database on August 14, 2007.
    At the time of assignment, the balance was certified to be $12,124.49 in unpaid principal and
    $435.80 in accrued interest. FDSL Program Specific Screen R116 for Kelly McCain
    (maiden name McKinnon) (Sept. 27, 2010) (Exh. 7).

12. Since DoE's Default Resolution Group has held this FDCL, credits totaling $7,007.00 (Voluntary Payments (VO): $2,255.00 and Federal Offsets (FO): $4,752.00) have been applied to Ms. McCain's account. Account Transaction Screen R103 for Kelly McCain (maiden name McKinnon) (Sept. 27, 2010) (Exh. 12).

13. On September 16, 2009, DoE received an undated letter from Ms. McCain's husband, offering $7,500.00 to settle Ms. McCain's student loan debt. Letter from Kristian McCain to Whom It May Concern (undated) (Exh. 8).

14. On October 29, 2009, DoE denied the settlement offer and countered with $9,580.00 to satisfy-in-full Ms. McCain's student loan debt.

15. The Ms. McCain's compromise offer, DoE's denial of the compromise offer and DoE's counter offer was included in a letter to The Honorable Mary L. Landrieu, dated November 4, 2009. Letter from Naomi Randolph, DoE, to Senator Mary Landrieu (November 4, 2009) (Exh. 10).

16. On December 10, 2009, DoE's contractor Vangent requested a confirm compromise, M95 letter that was sent to the Ms. McCain. The letter included an incorrect compromise amount of $1,980.00. Letter from DoE to Kelly McCain (maiden name McKinnon) (December 10, 2009) (Exh. 11).

17. On December 21, 2009, DoE received a payment from the Ms. McCain in the amount of $1,980.00. Cashier's Check for $1,980 from Kelly McCain (maiden name McKinnon) to the DoE (December 17, 2009) (Exh. 13).

18. On March 8, 2010, DoE received an undated letter with a copy of the M95 letter and copy of the cashier's check in the amount of $1,980.00 from Ms. McCain. Letter from Kelly McCain (maiden name McKinnon) to the DoE (undated) (Exh. 14).

4

19. On March 22, 2010, DoE responded to Ms. McCain's letter received on March 8, 2010, stating that $1,980.00 did not satisfy in full Ms. McCain's account and the compromise letter sent on December 10, 2010 was sent in error.  Letter from the DoE to Kelly McCain (maiden name McKinnon) (March 22, 2010) (Exh. 15).

I declare under penalty of perjury that the forgoing is true and accurate to the best of my knowledge, information and belief.

Executed on October 7, 2010

Alberto Francisco
Senior Loan Analyst
Processing Division
Litigation Support

# EXHIBIT 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KRISTIAN M. MCCAIN and KELLY ·     )
S. MCCAIN f/k/a KELLY S. MCKINNON,   )
                                 )
                Plaintiff,     )
                                 )
              v.            )
                                 )
THE UNITED STATES,          )
                                 )
              Defendant.     )

No. 10-264C
(Judge Firestone)

## DECLARATION OF GARY P. STUSSIE

I, Gary P. Stussie, declare as follows:

1. I am the Senior Contracts Manager of Vangent, Inc. ("Vangent") assigned to administer the Common Services for Borrowers subcontract Vangent has with ACS Education Solutions, LLC.

2. Vangent operates the Default Resolution Group Information Center supporting the Department of Education. Vangent assists borrowers with respect to issues associated with defaulted loans that have been assigned to the Department of Education. Vangent is a subcontractor to ACS Education Solutions, LLC.

3. Ms. Kelly McCain (maiden name McKinnon), is a student loan borrower who took out a Federal Direct Consolidation loan from the United States Department of Education ("DoE") and subsequently defaulted on it. Ms. McCain's loan was loaded to the DoE's Debt Management and Collection System (DMCS) on August 14, 2007, at which time the balance was $12,560.29 ($12,124.49 in unpaid principal and $435.80 in accrued interest).

4. On May 18, 2009, the borrower's spouse, Mr. Kristian McCain, called the Default Resolution Group Information Center (DRGIC) and stated that he wished to settle Ms. McCain's account for $3,500.00. Because the amount he offered was less than the amount Vangent is authorized to accept, Vangent did not accept the offer and sent a Financial Statement form for a discretionary compromise to the borrower.

5. On September 16, 2009 Vangent was forwarded a Financial Statement form in which the borrower proposed a compromise settlement amount of $7,500.00 (the original amount of the loan underlying the consolidation loan).

6. On October 27, 2009, Vangent was forwarded a letter from Senator Mary Landrieu concerning borrower's account. Vangent contacted Deneen Allen, Senior Loan Analyst at Region 5 to have the Financial Statement form processed. Ms. Allen notified Vangent that the discretionary compromise for $7,500.00 was denied, but that a counter discretionary compromise offer of $9,580.00 was approved.

7. Vangent drafted a response to Senator Landrieu providing the terms of the approved compromise offer. Ms. Allen approved the response on November 4, 2009. The response was mailed to Senator Landrieu's office on November 7, 2009.

8. On December 8, 2009, the borrower's spouse called the DRGIC and stated that he had not received a response to the $7,500.00 compromise offer. As a result of this call, on December 8, 2009, Vangent Customer Service Representative Daniel Smith (indentified in the computer records as "D. Gable") ordered a system-generated M95 compromise agreement letter for the account of Kelly McCain (McKinnon). CSRs are encouraged to use a pseudonym (D. Gable) so that Clients do not attempt to look them up and contact them after hours. A formal name/pseudonym mapping is maintained by the contact center. The system generated the letter on December 10, 2009. The total outstanding debt on the account at the time was $11,980. Mr. Smith incorrectly entered a compromise amount as $1,980.00 instead of the approved amount of $9,580.00. As a result, December 10, 2009 letter contained a mistake as to the amount of the compromise offer.

9. Pursuant to Paragraph 5 of the Common Services for Borrowers Compromise Guidebook ("Guidebook"), Vangent has authority to compromise all fees and the lesser of:

   - Up to 10% off combined principal and interest... or
   - Principal plus 50% of interest.

   Guidebook at pp.1-2 ▓▓▓▓ (Exh. 4)


   I declare under penalty of perjury in accordance with the laws of the United States that the foregoing declaration is, to the best of my knowledge, true and correct.

   *Gary P. Stussie*

   Name: Gary P. Stussie, CFCM
   Title: Senior Contracts Manager
   Executed on October 6, 2010.

# EXHIBIT 4

**Dressler, Denna M**

# COMPROMISES



Offsets and Compromises

1% Billing

Compromise Negotiator

Compromises Approved
Prior to 3-17-00

Federal Reversals

Retroactive Collection
Agency Comp Approval

*(Updated November 2, 2009)*

**Borrowers who request a compromise should be handled as follows:**

**AG location codes:** refer caller to the agency to discuss compromise settlements. (If the agency set a compromise, CSB can accept a 3rd party credit card as payment for the comp)

**ED location codes:**

1. CSB is authorized to negotiate compromises on any account for which CSB can currently set up payment arrangements. (including POVRs)
2. **CSB can now negotiate compromises for accounts with judgments.**
3. **CSB can now negotiate compromises for in-house AWG accounts.** We will not stop the AWG until the comp is met and the AWG payments **do** count toward the comp. Once the comp is met the system will close the account and send a W32 to the employer.
4. **If in Federal Salary Offset:** CSB Correspondence can make compromise agreements for accounts in Federal Salary Offset. Callers in Federal Salary Offset wanting a compromise can write to the CSB address with the necessary underline documents. If the written compromise payment request is for 90% or greater of the combined principal and interest only a request is needed. If the caller wants to compromise for less than 90% of the principal plus the interest they will need to also send the support documentation listed below in item 4 of the negotiation talk-off. Federal Salary Offset payments WILL count towards the compromise.
5. CSB is authorized to compromise all fees and either the lesser of:

1

  - o  up to 10% off combined principal and interest (round up to the nearest $5.00) or
  - o  principal plus 50% of interest (round up to the nearest $5.00)

6. Accounts in ED035, or otherwise not in default, may also be compromised. Rehabilitated NDSLs in ED710 are NOT eligible for compromise.
7.
8. The compromise amount may not be less than $100 (unless it is a POVR or the borrower is paying a portfolio write off in full), and the compromise must apply to all open debts in the account (i.e., the borrower may not compromise only debts he agrees with if he is disputing others).
9. 8. POVR's can be compromised even if the balance is below $100.

> Example 1. Borrower owes $900 principal and $100 interest.
>
> Method 1 would result in a compromise of $900 (90% of $900+$100)
>
> Method 2 would result in a compromise of $950 ($900 + 50% of $100)
>
> In this example, you could offer a compromise of $900.
>
> Example 2. Borrower owes $700 principal and $300 interest.
>
> Method 1 would result in a compromise of $900 (90% of $700+$300)
>
> Method 2 would result in a compromise of $850 ($700 + 50% of $300)
>
> In this example, you could offer a compromise of $850.

## Negotiation Talk-Off

1. Can offer compromise to any borrower who expresses an inability to pay the account in full.
2. If a borrower is interested in compromise, ask the borrower to state an offer amount.

  - o  If the borrower offers more than 90% of combined P&I (based on the balance owed at the time the compromise agreement is negotiated), accept that offer.
  - o  If the borrower offers less than 90%, counter with the 90% amount.
  - o  If ½ the interest + principal is less than the 90%, go ahead and offer that next.

2

1. Advise the borrower that full payment of this amount must be made by cashier's check, money order or WU quick collect within 90 days of the agreement date. <u>See below for credit card information</u>
2. Advise the borrower that entering into the agreement will NOT prevent TOP offset or assignment to a collection agency. If the terms of the comp are met, any overpayment resulting from a TOP offset will be refunded, and the account will be recalled. Entering into the agreement will not stop AWG.
3. 5. Request that the borrower immediately send in a good faith payment of at least $25 to help prevent their account from being transferred to a collection agency. (Though the operator must initially request this payment, it is not a requirement in the event the borrower resists.)
4. **Send the <u>M95</u> letter at the time of agreement.** This letter requires an "optional amount" be entered. Enter the agreed compromise amount as the optional amount.
5. If the borrower insists on a compromise settlement lower than 90% of combined P&I or lower than ½ interest + principal (or is in Federal Salary Offset), the borrower will need to send their proposal and the following documents to the CSB address: (You can send the Comp Package from the <u>PIC2 Screen</u> to assist the borrower)

   o Send a T33 (or refer to the web site for downloading) to be returned with the information below
   o 1040 tax return for the most recent tax year
   o If a wage earner:, W2 for the most recent tax year. If not wage earner: other documentation of current income (source and amount)
   o List of assets and their value (bank accounts, etc.) if available
   o Any special circumstances the borrower feels should be considered (e.g. they're dying of a terminal illness)
   o The circumstances will be reviewed and the borrower will receive a response within 60 days. In the interim, the borrower should make good faith monthly payments.

### Notepad Update

\*\*ALWAYS\*\* annotate the L102 with the comp amount offered to the borrower whether they decline it or not. If they decline it, put that in the notes also. If they approve, follow the below directions.

**It is critical that the notepad be updated exactly according to the following specifications. ED runs programs that attempt to read the notepad literal to determine the comp amount. If the literal is off by even one character, these programs will fail, and the account may not close properly.**

The comp agreement must be documented on its own line of the notepad, and should read as follows:

3

```
***COMP APPROVED: $XXXX.XX
```

The characters up to and including the dollar sign must be exactly as shown. There is a single space between "comp" and "approved", and a single space between the colon and the dollar sign. The first number of the dollar amount must be the 20th character on the notepad line. The dollar amount must not include commas, and it must include a decimal and a value to the right of the decimal (even if that value is 00). Thus, a compromise where the borrower agrees to pay $1000.00 would read:

```
***COMP APPROVED: $1000.00
```

There should be nothing to the right of the dollar amount on this notepad line. A macro has been set up called "COMP" on Pad 1.

### Other Rules

1. At lead staff's discretion, the due date for a compromise may be extended, the compromise will always be due 90 days from the notepad date.
2. The agencies may tell the borrower they have "XX" number of days to meet the settlement, as long as the borrower is within the timeframe the agency set we (CSB) should enforce this due date. However, if the borrower makes the comp payment within 90 days of the compromise-approval date, we can still accept this payment as SIF. If the caller goes outside the full 90 days and the account is still with a collection agency, then refer the caller to the collection agency for further assistance. DO NOT tell the borrower they will always have 90 days to meet the compromise. If the account has been returned to ED and the 90 days has elapsed without FULL SIF payments, then we can re-negotiate a new compromise with the current ED balance.
3. CSB has the right to refuse to offer or extend a compromise agreement if it appears the borrower is not acting in good faith.
4. You should recall any account assigned to a PCA after the borrower has made a comp agreement with DRG but before that comp agreement has expired. In other words, during the 90-day compromise period, the borrower should be considered immune from PCA transfer.
5. CSB can accept 3rd party credit cards on a collection agency compromise.
6. **If the borrower makes a credit card payment as his/her final compromise payment, you may send the U26 immediately. There is a portion of the letter advising the borrower if any of the payments put toward the compromise is returned then this letter is NULL AND VOID. This will hold true for 3rd party credit card payments on ED/CSB compromises.**
7. **Americorps vouchers will count toward a compromise once they're posted on the R103.**

Once the compromise has been paid the borrower should call back to request the account be closed and/or to receive a letter stating the account has been compromised.

If the balance is **less than** $25, the appropriate letter to send is the U26.

If there is a balance remaining on the account **greater than** $25, send a U26 and log the account under the compromise button.

# Offsets and Compromises

An offset will count toward the compromise if both:

- o  the **posting date** is **after** the compromise **agreement date** (from the L102)
- o  and the **effective date** is **before** the compromise **due date** (effective on the R103).
- For compromises approved 3/17/00 or later, ED will refund an offset that overpays the agreed upon compromise amount. For compromises approved prior to 3/17/00, click here.
- Below are several examples based on the following situation:

**L102 shows a note dated 4/1 stating compromise agreement of $1,000 due 5/1/00.**

**Example 1:** The borrower's ofset of $500 posts to the R103 with a posting date of 3/15/00.

--Because the offset actually occurred prior to the agreement, the offset does not count towards the compromise. The borrower can pay either the compromise amount or the rest of the balance; whichever is lower.

**Example 2:** The borrower's offset of $500 posts to the R103 with a posting date of 5/15 and effective date of 4/15.

--The offset counts towards the compromise and the borrower only needs to send in the remainder of $500.

**Example 3:** The borrower's offset of $1500 posts to the R103 with a posting date of 5/15, effective date 4/15/00. ED balance remaining is $100.

--The offset counts towards the compromise. Because the borrower exceeded the compromise agreement, there is a refund due of $500. Log for the refund with the Refund button and also log to have the account closed with the Comp button.

**Example 4:** The borrower makes a voluntary payment in the amount of $1000 effective 4/1/00. The borrower's offset of $1500 posts to the R103 effective 3/15/00. ED balance is $100.

--The compromise agreement is overpaid so a refund is due. Log for the refund with the Refund button and also log to have the account closed with the Comp button.

# Compromises Approved Prior to 3-17-00

**Prior to 3/17/00, compromises were affected by an exception to the compromise agreement.** Letters were sent by ED (the M95) or AG confirming a borrower's compromise agreement, and advised them that ED will keep any offset effective within 60 days of the final compromise payment. Below are the letter codes for each collection agency contained the exception (this is not a comprehensive list).

| | | | | | |
|---|---|---|---|---|---|
| AG502 | 015 | AG514 | 219 | AG526 | 428 |
| AG504 | 052 | AG516 | 245 | AG528 | 461 |
| AG506 | 085 | AG518 | 285 | AG530 | 498 |
| AG508 | 119 | AG520 | 326 | AG532 | 514 |
| AG510 | 149 | AG522 | 357 | AG536 | 563 |
| AG512 | 196 | AG524 | 389 | | |

The letters contain a version of the following (I bolded the print for your convenience):

**"PLEASE NOTE THE FOLLOWING EXCEPTIONS TO THIS COMPROMISE:** IF YOUR ACCOUNT HAS BEEN REDUCED BY OFFSET OF ANY FUNDS OWED YOU BY THE FEDERAL GOVERNMENT, THIS SETTLEMENT OFFER MAY BE RESCINDED, AND YOU WILL BE REQUIRED TO PAY THE AMOUNT OF ANY REDUCTION CAUSED BY A REVERSAL OF THAT OFFSET WHICH IS REPORTED TO US IN THE FUTURE. IN ADDITION, **IF AN OFFSET OF FEDERAL FUNDS OWED TO YOU IS PENDING AND IS RECEIVED WITHIN 60 DAYS OF THE DATE WE RECEIVE YOUR SETTLEMENT PAYMENT, WE WILL KEEP ANY AMOUNT OF THAT OFFSET UP TO THE AMOUNT WE ARE AGREEING TO WAIVE IN THIS COMPROMISE."**

## Example:

L102 shows a note dated 3/1/00 stating compromise agreement of $1,000 due 4/1/00.

The borrower's offset of $1500 posts to the R103 effective 3/15/00. ED balance remaining is $100.

--The offset counts towards the compromise. Although the borrower exceeded the compromise agreement, there is no refund due because the account itself was not overpaid and the compromise agreement was approved prior to 3/17. Log to have the account closed with the Comp button.

6

**Accounts where an account will be or has been compromised and now there is a federal reversal.**

Skip to Examples

In general, if a reversal of a Federal offset occurs after a compromise agreement has been made, the borrower needs to pay the amount agreed to in the compromise AND the amount of the reversal within a maximum of 90 days. In short, the fact of a reversal does not necessarily retract or invalidate the compromise offer, although it may invalidate a notice of satisfaction. On the other hand, compromises are offered on the condition that the debt will be paid off in a short period of time: we do not want to give borrowers the benefit of the balance reduction and also allow them to pay back the reversed amount over an indefinite period of time.

Reverse any CO transactions as necessary and enter a new comp agreement based on the reversal amount and if there was anything left to satisfy the original comp.

If you have to reverse a CO transaction, use the Reverse Portfolio button to request this.

If an account has since been assigned to a collection agency because the account hadn't yet been closed. You can still offer the new comp, but be sure to note these circumstances on the L102.

Below are several examples to illustrate how to handle various circumstances. Please review these carefully and if you get an account with a comp and reversal, double check these procedures. They will also be made available in the online black book.

Be sure to ask if you have questions!

In these situations where a federal reversal occurred, the borrower may have received the A55 advising why there is now a balance on the account after the compromise.

reversal of offset that posted before comp agreement

reversal of offset that was used to pay the comp

reversal of offset that overpaid the comp

reversal offset that overpaid the comp and was refunded

7

<u>reversal offset of comp overpaid where offset paid part of comp</u>

## Scenario 1: **reversal of offset that posted before comp agreement**

1/1: $500 offset posts, leaves acct balance of $1000

2/1: comp agreement is made, borr agrees to pay $900

3/1: borr makes voluntary payment of $900, thus satisfying the comp

4/1: $500 fed reversal posts.

CSB should reverse the CO transaction if there is one, and then offer the borrower a new 90-day comp of $500. Borrower must pay the $500 within comp timeframe or else pay back the whole uncomped balance over a longer period of time.

## Scenario 2: **reversal of offset that was used to pay the comp,**

2/1: acct balance is $1000, comp agreement is made, borr agrees to pay $900

3/1: an offset of $900 posts

4/1: a $500 fed reversal posts

CSB should reverse the CO transaction if there is one, and then offer the borrower a new 90-day comp of $500. Borrower must pay the $500 within comp timeframe or else pay back the whole uncomped balance over a longer period of time.

## Scenario 3: **reversal of offset that overpaid the comp**

2/1: acct balance is $1000, comp agreement is made, borr agrees to pay $900

3/1: borr makes a voluntary payment of $900

4/1: a $500 offset posts

5/1: the $500 offset is reversed

No CSB action is needed except to ensure the account is closed.

**Scenario 4: reversal offset that overpaid the comp and was refunded**

2/1: acct balance is $1000, comp agreement is made, borr agrees to pay $900

3/1: borr makes a voluntary payment of $900

4/1: a $500 offset posts

5/1: ED refunds the $500 offset

6/1: the $500 offset is reversed

CSB should reverse the CO transaction if there is one, and then offer the borrower a new 90-day comp of $500. Borrower must pay the $500 within comp timeframe or else pay back the whole uncomped balance over a longer period of time.

**Scenario 5: reversal offset of comp overpaid where offset paid part of comp**

2/1: acct balance is $1000, comp agreement is made, borr agrees to pay $900

3/1: borr makes a voluntary payment of $500

4/1: a $500 offset posts, overpaying the comp by $100

9

5/1: the $500 is reversed

The borrower only needs to pay the remainder of the comp. A new comp of $400 should be entered.

# Retroactive Collection Agency Comp Approval

We are now able to authorize retroactively approve compromise agreements on accounts assigned (or formerly assigned) to a PCA, **if ALL** of the following are true:

1) The borrower claims that s/he was offered a compromise amount by the PCA; **AND**

2) On the date this compromise offer was allegedly made, the amount of the compromise offer fell within our authority for offering a compromise (the lesser of: 90% of Principal + Interest, or Principal plus 50% of Interest). You should use the R110 screen to determine what the account balance was on the approximate date the borrower says the compromise was offered. **AND**

3) The borrower has paid the full amount of the alleged compromise offer within 90 days of when it was made. Normal guidelines for counting involuntary payments should be followed.

**Further guidance:**

1) If the borrower has not yet paid the amount of the alleged compromise s/he should be referred to the PCA for handling.

2) If you approve a retroactive compromise under these new guidelines, you should:

- **document the notepad as follows: \*\*\*RETROACTIVE COMP APPROVED; BORR CLAIMS AGXXX OFFERED COMP OF $X ON [DATE]** and log the account for comp closure.

Denna Dressler
Call Center Supervisor
Vangent, Inc.
**CSB/DRG**
denna.dressler@vangent.com
785-830-2453

10

# EXHIBIT 5

Loan History (KELLY N MCKINNON)                                      Page 1 of 2





Loan History | Overpayment List | Grants | Delinquent Borrowers | Exit Counseling History | Student Access Interface

SSN:            First Name:          DOB:                                  [Retrieve] [Name Search]
                                              (MMDDCCYY)
                     Logged on as: SHERYL DAVIS from Department of Education Region 9

                           KELLY N MCKINNON
                                                    DOB:



                                                                   

          Defaulted                                                    Grants

                              Loan History

                          Aggregate Loan Information

| Loan Type | Outstanding Principal Balance | Pending Disbursements | Total |
|---|---|---|---|
| Undergraduate | | | Award Year: 2000 ① |
| Subsidized Loans | N/A | N/A | N/A |
| Unsubsidized Loans | $4,311 | $0 | $4,311 |
| Combined Loans | $4,311 | $0 | $4,311 |
| Consolidation Loans, Unallocated | $2,418 | | $2,418 |
| Totals | | | |
| Subsidized Loans | N/A | N/A | N/A |
| Unsubsidized Loans | $4,311 | $0 | $4,311 |
| Combined Loans | $4,311 | $0 | $4,311 |
| Consolidation Loans, Unallocated | $2,418 | | $2,418 |
| Other | | | |
| Perkins Loans | N/A | | N/A |

                          Master Promissory Notes

| MPN Type | Code | PLUS Borrower |
|---|---|---|
| Direct Stafford | N | N/A |
| Direct PLUS | N | N/A |

                              Loan Summary

Loan History (KELLY N MCKINNON)                                        Page 2 of 2

Sort by:  --- Select ---

Display Only:  ---- ALL ----                                          [ Submit ]

Currently Sorted by LOAN DATE, No filtering.

**1**   D5 - DIRECT CONSOL UNSUB              Status: DU as of 07/31/2007   [ Loan Detail ]

| Approved Amt: | $11,706 | Disbursed Amt: | $11,706 | OPB: | $6,729 | Agg. OPB: | $4,311 |
|---|---|---|---|---|---|---|---|
| Loan Date: | 06/17/2005 | Sep. Loan Ind: | A | Loan Period: | | N/A - N/A | |
| Last Disb. Date: | 06/17/2005 | Last Disb. Amt: | $11,706 | Acad. Lv: | N/A | | |
| ED Servicer: | DEBT COLLECTION SERVICE - 555 | | | | | | |

**2**   SF - FFEL STAFFORD SUB               Status: CA as of 07/03/2000   [ Loan Detail ]
        NORTHWESTERN STATE UNIVERSITY

| Guaranteed Amt: | $3,000 | Disbursed Amt: | $0 | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|
| Loan Date: | 05/01/2000 | Sep. Loan Ind: | A | Loan Period: | 05/15/2000 - 08/04/2000 | | |
| Last Disb. Date: | N/A | Last Disb. Amt: | $0 | Acad. Lv: | 2 | | |
| GA: | USA FUNDS, INC | | | | | | |
| Lender: | WELLS FARGO BANK, N.A. | | | | | | |

**3**   SU - FFEL STAFFORD UNSUB             Status: DN as of 06/20/2005   [ Loan Detail ]
        NORTHWESTERN STATE UNIVERSITY

| Guaranteed Amt: | $7,500 | Disbursed Amt: | $7,500 | OPB: | $0 | Agg. OPB: | $0 |
|---|---|---|---|---|---|---|---|
| Loan Date: | 07/10/1999 | Sep. Loan Ind: | A | Loan Period: | 08/20/1999 - 05/12/2000 | | |
| Last Disb. Date: | 12/10/1999 | Last Disb. Amt: | $3,750 | Acad. Lv: | 2 | | |
| GA: | USA FUNDS, INC | | | | | | |
| Lender: | WELLS FARGO BANK, N.A. | | | | | | |

Notes:
① For the determined award year and academic level displayed, the dependency status is/was Independent.

PRIVACY ACT OF 1974 (AS AMENDED)

# EXHIBIT 6

Borrower's Name _Kelly Suzanne McKinnon_                    MAY 1 1 2005

Borrower's Social Security Number ███████████

## Section E: Repayment Plan Selection

Carefully read the repayment plan information in "Direct Consolidation Loans" that accompanies this application and promissory note to understand your repayment plan options. Then, complete this section to select your repayment plan. Remember–

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" and "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms that accompany this application and promissory note. Your selection cannot be processed without these forms.
- If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.

31. Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

|  | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|
| **STUDENT LOANS** *Direct Subsidized and Unsubsidized Consolidation Loans* | ☑ | ☐ | ☐ | ☐ |
| **PARENT LOANS** *Direct PLUS Consolidation Loans* | Not Available | ☐ | ☐ | ☐ |

## Section F: Promissory Note (Continued on reverse side)        To be completed and signed by borrower and spouse, if applicable.

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in Section D. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree to, the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

32. Signature of Borrower _Kelly S McKinnon_                Date _May 9, 2005_

Signature of Spouse (if consolidating jointly) _____        Date _____

Page 3

# EXHIBIT 7

10:12:58 Monday, September 27, 2010

```
  ( R116 )            FDSL PROGRAM SPECIFIC SCREEN                      09/27/10
                   REGION: 05  ACCT OWNER: ███████                      12:12
ACCT NO:
███████
              ACCT NAME: MCKINNON           KELLY              NMN
              PREV NAME:
              STUDENT NAME:
              STUDENT SSN:              STUDENT BIRTHDATE:
------------------------------------------------------------ PAGE  1 OF  1
DEBT NO: ████████1001  IND:  A  DATE ENT: 08/14/07   SUBSIDIZED IND: U
   PRINCIPAL:         INTEREST:        PENALTY:        ADMIN:         FEES:
   12,124.49          435.80
                                                TOTAL:          12560.29
INTTYP:  ADD-ON:   INTRATECAP:  REPAYDTE:  INTDEDMOS:  COLLFEECAP:  DEFCODE:
   F      .00%       .00%      07/01/05      13         99.99%       DEF
ORGSVR: SUBSVR:  SID:  FSTDISBDT: LSTDISBDT: LOANTPE: DEFTDTE: REASON: OPEID:
00101    00101  099998  06/17/05   06/17/05   CONS   05/04/07    1   88888800
OCCURS:  01
SVCLOANID:                                   CAPINT:      AMTCOLBYSVR:  LASTPDSVR:
███████3101                                  417.54
CREDREF:  LITIND:  JUDMTDT: JUDMTEXPDT: WITHDRAWAL:    DISB AMOUNT:    RATE:
200566      N                                          11,706.95      3.38%

PF13-R101 14-R102 15-R103 16-R104 17-R105 18-R106 19-R107 20-R108 21-R109
```

# EXHIBIT 8

To Whom it May Concern:

I am writing this as Kelly Mckinnon's husband, in response to her student loan and request for a compromise for a settlement on this account.

I married her not knowing about this, I don't think anyone runs a credit report on their soon to be spouse, but am willing to try and work out some compromise and try to do the right thing.

The original amount of the student loan was for $7500.00 dollars and then in 2005 she unknowingly signed for this consolidation of the original amount of the loan and the accrued interest and penalty's bring the principal amount to around $12,500.00 or so. I realize she is in default and did not do the smartest thing in the world by letting this loan go unattended.

I myself fell victim to a scam and identity fraud that left me in debt to the I.R.S. so along with this student loan I am not in the best of moods these days myself.

I am now disabled with a broken back and stage three liver disease and medical bills just for me are increasing monthly, and our son was born with food allergy's that are life threatening (peanut, eggs, green bean, and peas etc,). His medical bill and treatment must come first, before all else with me.

I am begging for help with this student loan and hope that for the sake of our marriage and family that this can be worked out .

I am willing to pay back the original $7500.00 student loan to the dept. of education . I am not willing to work with these collection agencies with their tactics of fraud and harassment that they have used since this come at me.

This has caused a strain on an American family and marriage that our politicians are supposed to hold dear. I would hope that you would put all efforts into helping our Family.

> Thank you
> Kristian McCain

P.S. I am sending the most recent copies of the information that I have on hand and that is settled that is requested for the compromise . I DO NOT think it is my responsibility to submit my information since this was long before we were married , but am sending it and hope that it is not used AGAINST ME . I am trying to do the right thing , but am expecting to get the butt end since I am dealing with the government..

# EXHIBIT 9

MARY L. LANDRIEU
LOUISIANA

# United States Senate

WASHINGTON, DC 20510–1804

October 14, 2009

F~SA~
10·23·9

Mr. Thomas Kelley
Assistant Secretary for Legislation
U.S. Department of Education
400 Maryland Ave. S.W.
Washington DC  20202-3100

RE: Kelly S. McKinnon

Dear Mr. Kelley:

Because of the desire of this office to be responsive to all inquiries and
communications, your consideration of the attached is requested.  Your findings and
views will be appreciated.

With kindest regards, I am

Sincerely,

Mary L. Landrieu

Mary L. Landrieu
United States Senator

MLL:lrw

Please reply to:



ORIGINAL NOT AVAILABLE



### Privacy Act Release Form
### for U.S. Senator Mary L. Landrieu

In compliance with the Privacy Act of 1974, I hereby authorize all agencies, departments, and private sector contacts to release all personal information pertaining to my case to Senator Mary L. Landrieu. I have asked for her assistance and give her my permission to pursue any inquiries she deems necessary.

Signature: _Kelly S McKinnon_   Date: 09/01/09

(Please Print Below)

Name: KELLY S MCKINNON

Address: █████████████████

City/Zip: █████████████████

Phone Number: ████████    Fax Number: (   )

Other Number: (   )

Date of Birth: ████████    Social Security Number: ████████

Other claim, case, or receipt number, if applicable:

Type of Case:   Social Security ☐    VA ☐    Other: ☐ Student loan

Brief Description of Problem:

I Originally took out $7500 in 1998. I did not know that I was taking out a Consolidation loan or acruided intrest in 2005 @ $12,000. Now the US Dept of Ed. wants there money. My husband & I will repay the original amount of the loan. I took out this loan before I married. My husbands taxes returns have been garnished because of this.

(please use additional sheets if necessary)

Return to:    The Honorable Mary L. Landrieu
United States Court House
300 Fannin, Suite 2240
Shreveport, LA 71101
Phone: 318-676-3085    Fax: 318-676-3100

ORIGINAL NOT AVAILABLE

# EXHIBIT 10



We Help Put America Through School

November 4, 2009

The Honorable Mary L. Landrieu
United States Senator
300 Fannin Street, Suite 2240
Shreveport, LA 71101

Debt No.: ████1001
Account No.: ████

Dear Senator Landrieu:

Thank you for your recent letter on behalf of Ms. Kelly S. McKinnon regarding her defaulted student loan account with the U.S. Department of Education, Federal Student Aid.

Ms. McKinnon's concerns, as we understand them, regarding her account are as follows:

- She indicates that she was unaware of the effect consolidation would have on her account balance.

- She indicates that her spouse's tax returns have been offset in partial repayment of her debt.

- She wishes to negotiate a compromise settlement of this debt.

The terms of the Federal Direct Consolidation Loan (FDCL) Ms. McKinnon received were stated in the promissory note. The promissory note is a binding legal document. When Ms. McKinnon signed the promissory note, she agreed to repay the loan according to the terms of the note. Once made, a Consolidation Loan cannot be unmade.

According to information reported to the Department's database of federal student loans, the National Student Loan Data System, in 1999, Ms. McKinnon received a loan made under the Federal Family Education Loan Program in the amount of $7,500.00 to attend Northwestern State University. The loan was later declared in default, and United Student Aid Funds, Inc., the guaranty agency, paid an insurance claim to the lender.

Our records indicate that in 2005, Ms. McKinnon received a FDCL in the amount of $11,706.95. The proceeds from Ms. McKinnon's FDCL were used to repay principal, interest, and collection costs owed on her existing loan. The amount disbursed became the new principal balance of the FDCL.

Page 2 – The Honorable Mary L. Landrieu

Interest owed on the FDCL was capitalized, increasing the principal balance. The loan was declared in default, and the Department's Direct Loan Servicing Center assigned this debt to the Department's Default Resolution Group. The loan entered our database on August 14, 2007. At the time of assignment, the balance was certified to be $12,124.49 in unpaid principal and $435.80 in accrued interest.

Since the Department's Default Resolution Group has held this account, credits totaling $1,542.00 have been applied, with the last voluntary payment of $50.00 received on October 27, 2009. Interest continues to accrue at the rate stipulated on the promissory note.

The amount needed to satisfy the outstanding balance on this account is $11,980.27, as of November 2, 2009. This balance includes $11,973.66 in unpaid principal and $6.61 in accrued interest.

Administrative offset of federal and state tax refunds and other payments is authorized by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996. Any account with the Department that has a balance and is not in repayment is eligible for referral to the U.S. Department of the Treasury's Financial Management Service for offset.

Ms. McKinnon's federal or state tax refund or other payment was offset in the amount of $1,092.00 and credited to her account on May 15, 2009. In addition, her payment was offset in the amount of $250.00 and credited to her account on May 21, 2009. Administrative offsets do not appear on billing statements as voluntary payments.

If a federal or state tax refund under the names of both Ms. McKinnon and her spouse was offset in partial repayment of Ms. McKinnon's debt, her spouse may be entitled to a full or partial reimbursement. Tax laws vary from state to state. To make a claim, Ms. McKinnon or her spouse must file an injured spouse claim with the Internal Revenue Service (IRS) or the state department of taxation. We have enclosed IRS Form 8379. This form must be sent to the IRS. For state tax refunds, Ms. McKinnon should contact the state department of taxation. However, Ms. McKinnon should carefully consider the impact that filing a claim may have on her debt. If her spouse receives a reimbursement, her account will be debited by a corresponding amount, increasing the balance on this account. We have enclosed additional information that Ms. McKinnon should consider before filing an injured spouse claim.

Ms. McKinnon wishes to settle this debt for $7,500.00. The Department does not accept this offer. When Ms. McKinnon signed the promissory note for her loan, she promised to pay principal, interest, and any fees and charges necessary for the collection of any amount not paid when due.

Page 3 – The Honorable Mary L. Landrieu

This notice confirms our offer to accept $9,580.00 as full settlement and satisfaction of Ms. McKinnon's obligation on this debt. To take advantage of this offer, Ms. McKinnon must forward secured payment (payment in the form of Quick Collect, cashier's check or money order) to:

> U.S. Department of Education
> National Payment Center
> P.O. Box 105028
> Atlanta, GA 30348-5028

Ms. McKinnon should include her name and Social Security Number on the front of all payment instruments.

This payment must be received by January 27, 2010. If we do not receive the settlement amount by this date, this offer will be void and Ms. McKinnon will be responsible for the full amount of her account, plus all penalties and fees that may be added.

Ms. McKinnon should note the following exceptions to this compromise:

- If any part of this student aid debt was reduced by offset of federal and/or state tax refunds or other payments and that offset is subsequently reversed either in whole or in part, this settlement offer may be rescinded, and she will be required to pay the amount of any reduction caused by a reversal of that offset, which is reported to us in the future.

- Entering into this agreement will not prevent the offset of federal and/or state tax refunds and other payments or assignment to a collection agency. If the terms of the compromise agreement are met, any overpayment resulting from an offset will be refunded, and the account will be recalled from the collection agency.

If Ms. McKinnon is unable to meet the terms of this settlement offer, the Department will accept monthly payments on the full balance owed. Ms. McKinnon should contact the Department's Default Resolution Group to discuss her repayment options.

For further information regarding her account and her repayment options, Ms. McKinnon should contact the Department's Default Resolution Group at 1-800-621-3115.

For more information, Ms. McKinnon may visit our Web site at www.1800iwillpay.com.

Page 4 – The Honorable Mary L. Landrieu

We hope this information will be helpful to you when responding to Ms. McKinnon.

Sincerely,

Naomi Randolph
Special Assistant, Operations Services
Federal Student Aid

Enclosures

# EXHIBIT 11



DO NOT SEND CASH
MAKE CHECKS PAYABLE TO:
U.S. DEPARTMENT OF EDUCATION
SHOW YOUR SOCIAL SECURITY NUMBER
ON YOUR CHECK

## RETURN THIS PORTION WITH YOUR PAYM
NOTE NAME/ADDRESS/PHONE NO. CHANGES ON BACK.

2641

KELLY NMN MCKINNON

**U.S. Postal Service™**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

ATLANTA GA 30348

| | |
|---|---|
| Postage | $ $0.44 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.54   12/18/2009 |

Sent To  *U. S. Dept. of Education*
Street, Apt. No.; or PO Box No.  *P.O. Box 105028*
City, State, ZIP+4  *Atlanta, GA 30348-5028*

7008 0000 3230 0002

PS Form 3800, August 2006           See Reverse for Instructions

---

KEEP THIS PORTION FOR YOUR RECORDS

## U.S. DEPARTMENT OF EDUCATION

DATE: DECEMBER 10, 2009

THIS NOTICE CONFIRMS OUR OFFER TO ACCEPT $1,980.00
AS FULL SETTLEMENT AND SATISFACTION OF YOUR OBLIGATION ON THIS DEBT. TO
TAKE ADVANTAGE OF THIS OFFER, YOU MUST FORWARD SECURED PAYMENT (PAYMENT
IN THE FORM OF QUICK COLLECT, CASHIER'S CHECK OR MONEY ORDER) ALONG WITH
THE DETACHABLE COUPON AT THE TOP OF THIS NOTICE TO THE ADDRESS ON THAT
COUPON.  THIS PAYMENT MUST BE RECEIVED WITHIN 90 DAYS OF THE DATE OF
THIS NOTICE.

IF WE DO NOT RECEIVE PAYMENT WITHIN THIS TIME PERIOD, THIS OFFER WILL BE
VOID AND YOU WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF YOUR ACCOUNT,
PLUS ALL PENALTIES AND FEES THAT MAY BE ADDED.

PLEASE NOTE THE FOLLOWING EXCEPTIONS TO THIS COMPROMISE.  IF YOUR
ACCOUNT HAS BEEN REDUCED BY OFFSET OF ANY FUNDS OWED YOU BY THE FEDERAL
GOVERNMENT, THIS SETTLEMENT OFFER MAY BE RESCINDED, AND YOU WILL BE
REQUIRED TO PAY THE AMOUNT OF ANY REDUCTION CAUSED BY A REVERSAL OF THAT
OFFSET WHICH IS REPORTED TO US IN THE FUTURE.

YOU MAY CONTACT THE FOLLOWING OFFICE WITH FURTHER QUESTIONS:

U.S. DEPARTMENT OF E
PO BOX 5609
GREENVILLE, TX   7540
(800)621-3115.

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

*National Payment Center*
*U.S. Dept. of Education*
*P.O. Box 105028*
*Atlanta, Ga. 30348-5028*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by (Printed Name)    C. Date of Delivery
                                    DEC 21 2009
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7008 3230 0002 8413 530

M95        0003299        0094      PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# EXHIBIT 12

10:16:56 Monday, September 27, 2010

```
( R103 )              ACCOUNT TRANSACTION SCREEN    ███████      09/27/10
                      REGION: 05   ACCT OWNER: ██████            12:16
      ACCT NO: ████████    ACCT NAME: MCKINNON          KELLY
DATA HAS BEEN ARCHIVED (      )                      AMNESTY:
   ED BALANCE:    6,808.97    PROJ/ACT CA:   1,657.30   CA BALANCE:     8,466.27
    TOTAL PMT:    7,007.00                     NET ADJ TRANS:          0.00
  VOLNTRY PMT:    2,255.00                     NET OTHER TRANS:    1,175.82
-----------------------------------------------------------------. PAGE   1 OF   3
EFFECTIVE      TOTAL      TRAN   INSTRUMENT    SEQ   IN  ORIG-B.SRC CRED  POSTING
  DATE        PAYMENT    TP RS    NUMBER     NUMBER  TP  POSTCL NBR SITE  DATE     S
--------     --------    -- --  ----------   ------  --  ------ ---- ---- -------- -
05/21/10     3,410.00    RG FO  000000000000 008302      TOP    TOP       05/27/10 _
05/21/10        21.17-   IA     000000000000 000000      POS    POS       05/27/10 _
05/21/10        16.00-   FF     000000000000 008296      TOP    TOP       05/27/10 _
04/28/10        25.00    RG VO  014043351979 000005  PY  BVOL   BOA AG590 04/28/10 _
04/28/10         4.90-   CF     014043351979 000000      POS    POS       04/28/10 _
04/28/10       117.81-   IA     014043351979 000000      POS    POS       04/28/10 _
12/21/09     1,980.00    RG VO  000000103621 000023  PY  BVOL   BOA       12/21/09 _
12/21/09        18.71-   IA     000000103621 000000      POS    POS       12/21/09 _
12/04/09        50.00    RG VO  000000004977 000027  PY  BVOL   BOA       12/04/09 _
12/04/09        41.86-   IA     000000004977 000000      POS    POS       12/04/09 _
10/27/09        50.00    RG VO  009149009017 000090  PY  BVOL   BOA       10/27/09 _
FIRST PAGE
PF13-R101 14-R102 15-R103 16-R104 17-R105 18-R106 19-R107 20-R108 21-R109
```

10:16:58 Monday, September 27, 2010

```
( R103 )                    ACCOUNT TRANSACTION SCREEN                   09/27/10
                         REGION: 05   ACCT OWNER:                        12:16
     ACCT NO:                     ACCT NAME: MCKINNON            KELLY
DATA HAS BEEN ARCHIVED (      )                                 AMNESTY:
   ED BALANCE:    6,808.97       PROJ/ACT CA:    1,657.30    CA BALANCE:     8,466.27
    TOTAL PMT:    7,007.00                               NET ADJ TRANS:         0.00
  VOLNTRY PMT:    2,255.00                 .            NET OTHER TRANS:     1,175.82
-------------------------------------------------------------- PAGE     2 OF     3
  EFFECTIVE      TOTAL     TRAN   INSTRUMENT     SEQ    IN ORIG-B.SRC CRED  POSTING
    DATE        PAYMENT   TP RS     NUMBER     NUMBER TP POSTCL NBR SITE    DATE     S
--------     --------     -- --  -----------  ------ -- ---------- -----   --------  -
10/27/09       31.99- IA      009149009017 000000    POS       POS        10/27/09 _
09/28/09       50.00  RG VO 009148930456 000151 PY BVOL       BOA        09/28/09 _
09/28/09       36.40- IA      009148930456 000000    POS       POS        09/28/09 _
08/26/09       25.00  RG VO 009108826224 000004 PY BVOL       BOA        08/26/09 _
08/26/09       23.16- IA      009108826224 000000    POS       POS        08/26/09 _
08/05/09       25.00  RG VO 009108825681 000007 PY BVOL       BOA AT552 08/13/09 _
08/05/09        4.90- CF       09108825681 000000    POS       POS        08/13/09 _
08/05/09       25.00  RG VO 009108825681 000007 PY BVOL       BOA AT552 08/06/09 _
08/05/09        4.90- CF     009108825681 000000    POS       POS        08/06/09 _
08/05/09       54.04- IA      009108825681 000000    POS       POS        08/06/09 _
06/17/09       25.00  RG VO 000000009196 000132 TC DSL       ONL        07/16/09 _

PF13-R101 14-R102 15-R103 16-R104 17-R105 18-R106 19-R107 20-R108 21-R109
```

10:17:00 Monday, September 27, 2010

```
( R103 )                ACCOUNT TRANSACTION SCREEN        ████        09/27/10
                     REGION: 05    ACCT OWNER: ████  ████             12:17
   ACCT NO: █████          ACCT NAME: MCKINNON           KELLY
DATA HAS BEEN ARCHIVED (    )                          AMNESTY:
  ED BALANCE:      6,808.97    PROJ/ACT CA:   1,657.30   CA BALANCE:    8,466.27
   TOTAL PMT:      7,007.00                        NET ADJ TRANS:          0.00
 VOLNTRY PMT:      2,255.00                      NET OTHER TRANS:      1,175.82
-----------------------------------------------------------  PAGE  3 OF    3
EFFECTIVE      TOTAL     TRAN   INSTRUMENT     SEQ    IN ORIG-B.SRC CRED  POSTING
  DATE        PAYMENT    TP RS    NUMBER     NUMBER   TP POSTCL NBR SITE  DATE    S
--------  -----------  -- --  ------------  ------  -- ---------- ----- --------  -
06/17/09        29.78- IA     000000009196  000000     POS        POS   07/16/09  _
05/21/09       250.00  RG FO  000000000000  011717     TOP        TOP   05/28/09  _
05/21/09         6.69- IA     000000000000  000000     POS        POS   05/28/09  _
05/21/09        17.00- FF     000000000000  011711     TOP        TOP   05/28/09  _
05/15/09     1,092.00  RG FO  000000000000  065034     TOP        TOP   05/22/09  _
05/15/09       729.51- IA     000000000000  000000     POS        POS   05/22/09  _
05/15/09        17.00- FF     000000000000  065026     TOP        TOP   05/22/09  _


LAST PAGE
PF13-R101 14-R102 15-R103 16-R104 17-R105 18-R106 19-R107 20-R108 21-R109
```

# EXHIBIT 13

 JAN. 22. 2010  2:00PM    BFCU MEMBER SERVICES     NO. 582 Page. 1 f 1

 3016

*Barksdale Federal Credit Union*

# Corporate

| Sequence | Capture Date | Member No. | Draft No. | Draft Amt. |
|----------|-------------|------------|-----------|------------|
| 7176 | 12222009 | 3016 | 3621 | 1980.00 |



FRB-Cleveland
5-0410-1567-24
20091221

[ Close ]

# EXHIBIT 14

To: Whom it may Concern
From : Kelly Mckinnon  Debt No; ███████1001    ACCONT No: ████████

We have written correspondence to several of your offices concerning this compromise offer . The only written notice we ever received was the offer from you to settle this debt in full for $1980.00 received on or around December 10,2009. To get this in writing took several phone calls .We have never gotten anything else.

We made arrangements to pay that amount in full and mailed within the 90 day period as per your offer. We mailed it signature receipt and had the receipt back dated December 21, 2009. It was made for the full $1980.00 and condition that you accept this as full payment for this debt and the offer from you is a legal document.

We are therefore holding you to your offer and will seek legal assistance if you DO NOT HONOR YOUR OFFER . If the offer dated December 10,2009 was an error you should have not accepted the payment and notified us of the error.

ALL ACTIONS TO TRY AND RECOVER ANY FURTHER PAYMENT OF THIS DEBT SHOULD STOP AND THE ACCOUNT SHOULD BE MARKED PAID WITH ALL ENTITIES NOTIFIED.

To : The U.S. Dept. of Education
From: Kelly Mckinnon (McCain)


I have enclosed full payment of $1980.00 as per your letter and consider this debt paid in full.
Please send receipt and all paper work associated with this debt indicating full payment to me at:

Kelly Mckinnon

████████████████

My husband and I appreciate all who have helped with this and getting this resolved.

Thank you

Kelly Mckinnon (McCain)



DO NOT SEND CASH
MAKE CHECKS PAYABLE TO:
U.S. DEPARTMENT OF EDUCATION
SHOW YOUR SOCIAL SECURITY NUMBER
ON YOUR CHECK

**RETURN THIS PORTION WITH YOUR PAYM**
NOTE NAME/ADDRESS/PHONE NO. CHANGES ON BACK

KELLY NMN MCKINNON

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

ATLANTA GA 30348

| Postage | $ | $0.44 | 0596 |
| Certified Fee | | $2.80 | |
| Return Receipt Fee (Endorsement Required) | | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $5.54 | 12/18/2009 |

Sent To *U. S. Dept. of Education*
Street, Apt. No.; or PO Box No. *P.O. Box 105028*
City, State, ZIP+4 *Atlanta, GA 30348-5028*

PS Form 3800, August 2006          See Reverse for Instructions

---

KEEP THIS PORTION FOR YOUR RECORDS

## U.S. DEPARTMENT OF EDUCATION

DATE: DECEMBER 10, 2009

THIS NOTICE CONFIRMS OUR OFFER TO ACCEPT $1,980.00
AS FULL SETTLEMENT AND SATISFACTION OF YOUR OBLIGATION ON THIS DEBT. TO
TAKE ADVANTAGE OF THIS OFFER, YOU MUST FORWARD SECURED PAYMENT (PAYMENT
IN THE FORM OF QUICK COLLECT, CASHIER'S CHECK OR MONEY ORDER) ALONG WITH
THE DETACHABLE COUPON AT THE TOP OF THIS NOTICE TO THE ADDRESS ON THAT
COUPON. THIS PAYMENT MUST BE RECEIVED WITHIN 90 DAYS OF THE DATE OF
THIS NOTICE.

IF WE DO NOT RECEIVE PAYMENT WITHIN THIS TIME PERIOD, THIS OFFER WILL BE
VOID AND YOU WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF YOUR ACCOUNT.
PLUS ALL PENALTIES AND FEES THAT MAY BE ADDED.

PLEASE NOTE THE FOLLOWING EXCEPTIONS TO THIS COMPROMISE: IF YOUR
ACCOUNT HAS BEEN REDUCED BY OFFSET OF ANY FUNDS OWED YOU BY THE FEDERAL
GOVERNMENT, THIS SETTLEMENT OFFER MAY BE RESCINDED, AND YOU WILL BE
REQUIRED TO PAY THE AMOUNT OF ANY REDUCTION CAUSED BY A REVERSAL OF THAT
OFFSET WHICH IS REPORTED TO US IN THE FUTURE.

YOU MAY CONTACT THE FOLLOWING OFFICE WITH FURTHER QUESTIONS:

U.S. DEPARTMENT OF E
PO BOX 5609
GREENVILLE, TX  7540
(800)621-3115

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*National Payment Center*
*U.S. Dept. of Education*
*P.O. Box 105028*
*Atlanta, Ga. 30348-5028.*

**COMPLETE THIS SECTION ON DELIVERY**
A. Signature
X ☐ Agent ☐ Addressee
B. Received by (Printed Name)  DEC 21 2009
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☑ Certified Mail  ☐ Express Mail
   ☐ Registered  ☐ Return Receipt for Merchandise
   ☐ Insured Mail  ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)     7008 3230 0002 8413 5390

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

M95     0003299     0044



JAN. 22. 2010  2:00PM    BFCU MEMBER SERVICES            NO. 582  Pagp.  of 1



*Barksdale Federal Credit Union*

## Corporate

| Sequence | Capture Date | Member No. | Draft No. | Draft Amt. |
|----------|--------------|------------|-----------|------------|
| 76517176 | 12222009 | | 3621 | 1980.00 |



**Barksdale Federal Credit Union**

No. 3621

P.O. BOX 9    BARKSDALE AFB, LOUISIANA · 71110-0009

DATE  12/17/09    CHECK NO. 3621    AMOUNT  *****1,980.00

KELLY MCKINNON MCCAIN

One Thousand Nine Hundred Eighty Dollars and 00 Cents

**CASHIER'S CHECK**

VOID AFTER 120 DAYS

PAY TO THE ORDER OF    US DEPT OF EDUCATION

FRB-Cleveland
>0410-1567-2<
20091221

[ Close ]

# EXHIBIT 15



**FSA**
FEDERAL
STUDENT AID

*We Help Put America Through School*

March 22, 2010

Ms. Kelly McKinnon

████████████████████

Debt No.: ████████████
Account No.: ████████████

Dear Ms. McKinnon:

Thank you for your correspondence concerning your student loan account with the U.S. Department of Education, Federal Student Aid.

You state that this debt has been satisfied in full. Our records indicate that the Department authorized a compromise settlement of your account. Compromise settlements are normally payable in one lump sum and have an expiration date after which the agreement is null and void. On November 4, 2009, we sent a letter to Senator Mary Landrieu stating that the Department agreed to settle your account for $9,580.00 to be received by January 27, 2010. This amount was not received by the due date, and the offer expired.

The compromise agreement letter dated December 10, 2010, that you presented was sent in error. We apologize for any confusion this may have caused you.

On December 21, 2009, the Department received a payment in the amount of $1,980.000. This payment was not sufficient to satisfy your debt in full. Our records do not show that you disputed the balance due in writing or presented any valid defense against repayment of the full balance due before you made the payment. There was no benefit to the Department in accepting the amount of $1,980.000 as settlement in full. Therefore, the Department does not accept the payment as settlement in full, even though the check was conditionally endorsed. The Department finds your student loan debt is legally enforceable.

The amount needed to satisfy the outstanding balance on this account is $10,087.99, as of March 22, 2010. This balance includes $10,004.23 in unpaid principal and $83.76 in accrued interest.

For further information regarding your account with the Department and your repayment options, you should contact the Department's Default Resolution Group at 1-800-621-3115.

Page 2 – Ms. Kelly McKinnon

For more information, visit our Web site at www.1800iwillpay.com.

We hope this information will be helpful to you.

Sincerely,

Default Resolution Group
Servicing Center